## BILL v. WESTERN UNION TEL. Co. and others.

*(Circuit Court, S. D. New York.  March 26, 1883.)*

**1. CORPORATIONS — LEASE BY BOARD OF DIRECTORS — VALIDITY — MAJORITY OF BOARD OF LESSOR DIRECTORS OF LESSEE.**

As the directors of a corporation are its agents, and represent stockholders, who are often practically voiceless in behalf of their own interests, they are held to the exercise of the utmost good faith in the administration of their trust; and where a statute authorizes a telegraph company to lease or sell its franchises and property to any other telegraph company, provided the lease or transfer be approved by a three-fifths vote of its board of directors, and also by the consent in writing, or by a vote at a general meeting, of three-fifths in interest of the stockholders, a lease of the property and franchises of a telegraph company is voidable at the election of the lessor, if at the time the lease was made a majority of the board of the directors of the lessor were directors of the lessee also, and the lessee owned nearly two-fifths of the stock of the lessor.

**2. SAME—SUIT BY STOCKHOLDER, WHEN MAINTAINABLE.**

An individual stockholder can maintain an action to set aside such a lease only when it is made to appear to the court that he has exhausted all the means to obtain, within the corporation itself, the redress of his grievances, or action in conformity with his wishes, and that he has made proper effort to induce action on the part of the other stockholders.

In Equity.

*Charles M. Da Costa* and *Luke A. Lockwood*, for complainant.

*Dillon & Swayne*, for defendants.

WALLACE, J.   The complainant, a stockholder of the Gold & Stock Telegraph Company, has filed a bill to set aside a lease of the property and franchises of that company to the Western Union Telegraph Company for the term of 99 years, and now moves for an injunction *pendente lite* to restrain the lessee from disposing of the property acquired under the lease.   The lessor and lessee are both corporations of this state, and by the act of May 2, 1870, authority is conferred upon any telegraph company organized under the laws of this state to lease or sell its franchises and property to any other telegraph company organized under the laws of the state, provided the lease or transfer be approved by a three-fifths vote of its board of directors, and also by the consent in writing, or by a vote at a general meeting, of three-fifths in interest of the stockholders.   The theory of the complainant's bill is that the lease was *ultra vires*, because the necessary consent of the directors and stockholders has not been given, and also that it was made for an inadequate consideration, and in breach of trust by the directors, and in the interest of the lessee.   Both the-

ories hinge upon the circumstance that the majority of the board of directors of the lessor were directors of the lessee at the time the lease was made, and upon the further circumstance that the lessee owned nearly two-fifths of the stock of the lessor at the time.

It is insisted for the complainant that the statutory authority to lease has not been pursued, because the three-fifths vote of the board of directors was cast by directors who were incompetent to vote, they being at the time directors of the lessee, and also because the requisite majority of consenting stockholders has not been obtained if the vote or consent of the lessee is excluded. Concededly, in the absence of statutory authority, the lessor corporation could not legally enter into such an agreement as is here assailed. Such a surrender of its franchises and abdication of its functions would be *ultra vires*. A majority of the stockholders could not sanction it, and a board of directors could not confer color of validity upon the transaction. It is fundamental that the majority have no power to represent the whole body in any matter which is outside the legitimate purposes for which the corporation is organized.

If the directors of the lessor were not competent to vote because they were at the time directors of the lessee, the lease is void. It cannot be supposed that the requisite quorum has been obtained, or that the statute contemplates or is satisfied by a vote of directors who are incompetent to vote. But the theory that the directors were incompetent to vote confounds the distinction between want of power and abuse of power; between a disqualification to vote which renders the vote nugatory, and the exercise of a power which has been conferred, but which ought not to be exerted. A director is not incompetent to vote because a sense of propriety may demand that he should not vote upon a particular occasion, nor is an agent incompetent to make a contract because the contract he has made was unfair or even fraudulent towards his principal. If the directors were incompetent to vote the lease would be absolutely void, and no action of the stockholders could validate it. If, however, the act of the directors was culpable or obnoxious to equity under the circumstances, while the corporation might repudiate their conduct, it might also ratify it, and would ratify it by accepting the benefits of the transaction, with knowledge of the facts.

The contention that the vote of the lessee must be excluded in ascertaining whether the quorum of stockholders have consented, does not seem reasonable. A stockholder may always vote in his own interest.

Upon the second theory of the complainant's case the inquiry arises whether, by reason of the relations sustained by the lessor's directors towards the lessee, their action in voting for the lease was in contravention of their duties to the lessor, and so obnoxious in the view of a court of equity as to render the lease void at the election of the lessor. It is well-settled that if directors of a corporation enter into a contract in its behalf with themselves as the other contracting party, the corporation may repudiate such contract.

In *Thomas* v. *Brownville, etc., Ry. Co.* 2 FED. REP. 877, it is held that a contract between a railroad company and a construction company is void where any of the directors of the railroad are members of the construction company, unless ratified by a board of disinterested directors. In *Wardell* v. *Union Pac. R. Co.* 4 Dill. 330, it is held that a contract made in behalf of the corporation by the executive committee of the board of directors, in which the members of the executive committee have a secret interest, is fraudulent as against the corporation, and the latter may repudiate it. Other authorities directly or impliedly decide that the contract may be upheld, if, notwithstanding the presence of interested directors, there was a quorum of disinterested directors who participated in making the contract. *Butts* v. *Wood,* 37 N. Y. 317; *Coleman* v. *Second Avenue R. Co.* 38 N. Y. 201; *U. S. Rolling Stock Co.* v. *A. & G. W. R. Co.* 34 Ohio St. 450; *Flagg* v. *Manhattan Ry. Co.* 10 FED. REP. 413.

These adjudications proceed upon the principle, familiar and elementary in the law of agency, that the same person cannot act for himself, and at the same time, and in the same transaction, as the agent of another whose interests are conflicting. If an agent to sell becomes the purchaser, or an agent to buy be himself the seller, a court of equity, upon the timely application of the principal, will presume that the transaction was injurious. Although the honesty of the agent may be unquestioned, and he may have attempted to exercise scrupulous impartiality as between his own interests and those of his principal, it is the right of the latter to repudiate the transaction. Directors of corporations are its agents, invested with wide powers and clothed with large discretion; they represent stockholders who are often practically voiceless in behalf of their own interests; and they are held to the exercise of the utmost good faith in the administration of their trust. They abuse the fiduciary relation which they sustain to the corporation and the stockholders, when they enter into contracts in which their private interests may antagonize the interests committed to their care. The law does not require the corpora-

tion to take the chances that the directors have not abused their position under such circumstances.

Practically and logically there can be no difference in the complexion of the transaction when the agent or the director, instead of interposing his personal interests between his principal and himself, interposes those of a third person. Undoubtedly the same person may be the agent of two distinct principals, and bind them both by his acts for each; but this is where he is expressly or impliedly authorized to act for each in the transaction with the other. Brokers fall within this category. But this does not advance the argument in favor of an agent who is selected for the sole duty of representing a single principal. The principal bargains for all the zeal and ability of his agent, and is entitled to their exertion in his own favor. He does not expect that his agent will place himself in a position where his obligations to another will raise a conflict of duties and interests. If the agent disregards this reasonable expectation, and attempts to serve two masters, the principal may assume that the agent has been unfaithful, and repudiate his act. Applying these principles to the case in hand the conclusion is obvious. If the directors could not enter into a contract with the lessee which the lessor could not repudiate because of the peculiar relations existing between the lessee and the directors, they could not bind the lessor by a vote which was the equivalent of a contract, or was indispensable to the validity of the lease.

Assuming that the lease was voidable at the election of the corporation, because its directors were also the agents of the lessee, it remains to determine whether the complainant, as a stockholder, can invoke the aid of the court to annul the lease. If he is not in a position to do so, it is immaterial whether the lease was for an inadequate consideration or not, or whether it was one which, for any reason, the corporation might repudiate. The question relates to the right of a stockholder to assert what, primarily, it is the province and the duty of the corporation itself to assert. His right to maintain an action like this is recognized only when the corporation refuses to assert the rights of the stockholders. The law is well stated in Morawetz, Corp. § 384, as follows:

"Ordinarily, the directors of a corporation have complete power to control its action, and decide whether it shall enter into a litigation or not. In such case, therefore, a shareholder cannot obtain the interposition of equity without showing that the directors are either unwilling or unable to bring suit on

behalf of the corporation. And even when the directors or ordinary managing officers of a corporation are at fault, it does not necessarily follow that the corporation is disabled from procuring justice for itself. For the majority of stockholders, in corporate meeting, have supreme authority under the charter to manage the corporate affairs; and whenever it is possible to obtain justice to the corporation by calling a stockholders' meeting and removing the offending officers and electing new ones, this remedy must be pursued. In such case a stockholder cannot obtain relief in equity, since the ground for relief fails; namely, that the corporation, his trustee, is unable to protect the trust."

In the recent case of *Hawes* v. *Oakland*, 104 U. S. 450, the supreme court has reviewed the authorities, and deduced the rule which it is the duty of this court to apply. The stockholder must show that he has exhausted all the means to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. "He must make an earnest effort with the managing body of the corporation to induce remedial action on their part, and this must be made apparent to the court. If time permits, or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body n the matter of which he complains, and he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it." And, in order to emphasize its views so clearly that no misapprehension can exist as to the duty of stockholders in this behalf, the supreme court promulgated rule 94 at the same term at which *Hawes* v. *Oakland* was decided. By this rule of practice it is made essential in every bill brought in this court by a stockholder in a corporation founded on rights which may properly be asserted by the corporation, to allege "with particularity the efforts of the plaintiff to secure such action as he desires on the part of the managing directors or trustees, and, if necessary, of the stockholders, and the causes of his failure to obtain such action."

It is sufficiently clear, in view of the action of the directors here, and their present attitude in affirming the validity and expediency of the lease, that any effort to induce them to take action in behalf of the corporation to annul it would be futile. The ceremony of an application to them on behalf of the complainant would be farcical. It may, therefore, be dispensed with, and the allegations of the bill in this behalf are probably in substantial compliance with rule 94. But the bill fails to aver that any effort has been made by the complainant to secure such action on the part of the stockholders as, upon his theory of the transaction, they ought to take. The bill ex-

pressly avers that the lease was not consented to by three-fifths in interest of the stockholders. It appears, however, from the defendants' answer and affidavits, that three-fifths in interest have consented. The complainant's case must rest upon the allegations of his bill. As to substantive allegations, upon a motion for an injunction, he is confined to the statements of his bill. Neither according to his allegations nor upon those of the defendant does it appear that an effort to induce the proper action on the part of the stockholders has been made or ought to be dispensed with. If a majority do not approve the lease, as stated by complainant, then he should have endeavored to induce them to remove the offending directors, and elect new directors who would assert the rights of the corporation. If, as stated by the defendants, a majority have consented to the lease, it does not appear that they knew what relations existed between the directors and the lessee when the consent was given, and therefore it is not apparent that they intended to ratify the action of the directors, much less that, in view of the circumstances, they would deny to the stockholders an opportunity to repudiate the transaction as unfair or injurious to them. It does appear that nearly two-fifths of the stock of the lessor was and is owned by the lessee corporation. Assuming that the lessee, as a stockholder owning two-fifths of the stock of the lessor, would refuse to assist in any remedial action, there is still a majority of stock held by those who have no interest except to protect their own rights and promote the good of the corporation. The complainant has failed to show a case within the adjudications, or the ninety-fourth rule, which entitles him to maintain this action.

If it should be assumed that a majority of the stockholders of the lessor have adopted, or are willing to adopt the act, of the directors, notwithstanding they were also directors of the lessee, the complainant is without remedy and without equities, as by permission of the statute such a lease is within the legitimate discretion of the corporation. It would not be equitable or just that a single stockholder, or a minority of the stockholders, should be permitted to defeat the wishes and thwart the interests of the majority. It is an implied condition of the association of stockholders in a corporation that the majority shall have authority to bind the whole body in any transaction within the corporate powers.

It may be that the facts are such that the complainant may be able to amend his bill, and present a case entitling him to relief. As the case is now presented, an injunction must be denied.