JOSEPHINE CHURCH v. CHURCH CEMENTICO COMPANY.

December 21, 1898.

Nos. 11,377—(169).

### Corporation—Assumption of Debt of Predecessor—Evidence.

*Held*, under the evidence at the trial of this action, that there was none upon which could be based a finding that defendant corporation had assumed or promised to pay a debt or liability of its predecessor in business. The fact that other obligations of the predecessor had been paid by the corporation did not tend to establish such an assumption or promise.

### Contract between Officer of Corporation and Company—Salary for Services.

A stockholder in a corporation, acting as its president, may enter into a salary contract for his services with it; but he cannot use his position when making such contract to his own advantage, or to the disadvantage of the corporation; nor can he bind it to pay him a greater salary than his services are reasonably worth; a contract of this kind between such president and the acting secretary and treasurer of the corporation will be scrutinized with great care.

### Same—Evidence.

*Held*, that the evidence in this action warranted a finding that such secretary and treasurer represented another stockholder, the owner of all of the stock shares except those held by the persons just mentioned, and was authorized to manage her interests therein; and also evidence which would warrant a finding that the shareholder last referred to was bound by the contract as to salary, because she could have learned of its existence in the exercise of ordinary prudence and diligence, and should then have repudiated it.

### Error to Admit Evidence of Conversation.

It was reversible error for the court below to allow evidence of private conversations between the president of the corporation and his wife, this plaintiff, as to what agreement he had made with respect to the amount of his salary.

Action in the district court for Ramsey county to recover $900 for the unpaid portion of salary of William Church from November, 1895, to April, 1897, inclusive. The memorandum mentioned in the opinion was as follows:

"This is to certify that I have this agreement and understanding with Wm. Church in relation to the Church Cementico Co. I am to pay him a salary of $125 per month, of which he agrees to leave $50 per month in the business, that he is to devote his time to the business. Said Church is to have a half interest in the business as follows: The profits are to be equally divided between us and whenever the profits apportioned to said Church equal the amount of money contributed by me, then he is to have a half interest in the said Cementico business. The sum of $50 per month left in the business from his salary to go to his profits. If the business shall be sold at any time, then Church is to have the $50 per month in cash.                                              Ross Clarke."

The complaint alleged that this memorandum was made in January, 1896, and, after its organization, the defendant corporation duly ratified the agreement so made in its behalf; that the business was sold by defendant about May 15, 1897, and that no profits were realized out of the business. The cause was tried before O. B. Lewis, J., and a jury, which rendered a verdict for $944.28 in favor of plaintiff. From an order denying a motion for a new trial, defendant appealed. Reversed.

*Bishop H. Schriber,* for appellant.

Before a corporation can be bound by a contract made on its behalf by a promoter, before it came into existence, the contract must have been ratified and adopted. Battelle v. N. W. Cement & C. P. Co., 37 Minn. 89. The vote of a board of directors of a corporation fixing the compensation of any of its directors as officers is prima facie voidable. Jones v. Morrison, 31 Minn. 140; Deane v. Hodge, 35 Minn. 146; Currie v. School District, 35 Minn. 163; Rothwell v. Robinson, 39 Minn. 1.

*Edwin A. Jaggard,* for respondent.

A corporation may impliedly contract to pay for services rendered to it, in pursuance of an express contract made on its behalf prior to organization, by accepting such services. Rendering serv-

ices after incorporation is the consideration for the promise by the company to pay for those rendered for its benefit before organization. See "Principles of Law Relating to Corporate Liability for Acts of Promoters" by Malcolm Lloyd, Jr., 36 Am. L. Reg. & R. (N. S.) 674. It is immaterial whether the liability of the corporation be based upon what is described by the language of the law as "ratification," (Whitney v. Wyman, 101 U. S. 392; Buffington v. Bardon, 80 Wis. 635; Stanton v. New York, 59 Conn. 272; Negley v. Lindsay, 67 Pa. St. 217; Lowe v. Connecticut, 45 N. H. 370); or as "adoption," (Pratt v. Oshkosh Co., 89 Wis. 406; Penn v. Hapgood, 141 Mass. 145; Abbott v. Hapgood, 150 Mass. 248; Munson v. Syracuse, 103 N. Y. 58; Rogers v. New York, 134 N. Y. 197); or as "the making of a new contract," (McArthur v. Times Printing Co., 48 Minn. 319); or as "estoppel," (Grape v. Small, 40 Md. 395; Weatherford v. Granger, 86 Tex. 350; Joy v. Manion, 28 Mo. App. 55; Lowe v. Connecticut, supra; 3 Thompson, Corp. 480).

This is the rule in Minnesota. Battelle v. N. W. Cement & C. P. Co., 37 Minn. 89; McArthur v. Times Printing Co., supra; Mackellar v. Anchor Mnfg. Co., 48 Minn. 549; Willis v. St. Paul Sanitation Co., 53 Minn. 370; St. Paul & M. T. Co. v. Howell, 59 Minn. 295; Rosemond v. N. W. Autographic Reg. Co., 62 Minn. 374.

A corporation cannot shield itself from the charge of constructive notice by saying that the impersonal corporate entity had no actual notice of the facts. St. Paul & M. T. Co. v. Howell, supra. This is easily a case in which guilty ignorance is an equivalent of actual knowledge. Finance Co. v. Old Pittsburgh Coal Co., 65 Minn. 442. See Kraniger v. Peoples Bldg. Soc., 60 Minn. 94; Horn Silver Min. Co. v. Ryan, 42 Minn. 196; Mackellar v. Anchor Mnfg. Co., supra; Deane v. Hodge, 35 Minn. 146; 1 Morawetz, Priv. Corp. §§ 551, 561; 2 Lindley, Part. 595, 596. Means of knowledge plainly within the reach of the stockholders by the exercise of the slightest diligence, is in legal effect equivalent to knowledge. Jesup v. Illinois Cent. R. Co., 43 Fed. 483.

A director is not forbidden to make a contract with his corporation for his personal services, when such services were actually rendered and the transaction is open and free from blame. Twin-Lick Oil Co. v. Marbury, 91 U. S. 587; Harts v. Brown, 77 Ill. 226.

There are very many implied as well as express contracts which a director may make with his corporation. See Twin-Lick Oil Co. v. Marbury, supra; Hotel Co. v. Wade, 97 U. S. 13; Santa Cruz v. Spreckles, 65 Cal. 193; Hallam v. Indianola, 56 Iowa, 178; Harts v. Brown, supra; Sanborn v. Lefferts, 58 N. Y. 179; Brinham v. Wellersburg, 47 Pa. St. 43; Hope v. Valley, 25 W. Va. 789; 2 Cook, Stockh. §§ 660, 663; Duncomb v. New York, 84 N. Y. 190, 88 N. Y. 1; Harpending v. Munson, 91 N. Y. 650; Borland v. Haven, 37 Fed. 394; Kelley v. Newburyport, 141 Mass. 496; Morse v. Home Sav. & L. Assn., 60 Minn. 316; Battelle v. N. W. Cement & C. P. Co., supra; Mackellar v. Anchor Mnfg. Co., supra; Ward v. Polk, 70 Ind. 309; Hospes v. N. W. Mnfg. & Car Co., 48 Minn. 174; 3 Thompson, Corp. §§ 4059-4075.

COLLINS, J.

Assuming, as we shall, for the purposes of this decision, and as asserted by plaintiff's counsel, that William Church, plaintiff's husband, was in the employ of Ross Clarke for the year ending November 1, 1896, and that they were not copartners in business; and, further, that the evidence at the trial was ample to support a finding that an assignment of that part of Church's salary which was mentioned and reserved in the memorandum signed by Clarke was duly and legally made to plaintiff, so that she had a right of action against some one when the business was sold; and also assuming that, as to this branch of the case, the assignments of error in respect to the admission or exclusion of evidence at the trial are not well taken, and also that the court did not err in its charge,— we are brought directly to a consideration of the facts as shown by the record concerning the assumption of the alleged indebtedness of Ross Clarke to plaintiff, by defendant company, at the time of the incorporation or later, although not then due, but which actually matured and became payable in cash when the business was sold to the Baker Company.

Was there any evidence upon which to rest a finding that defendant company ever assumed, expressly or by implication, that obligation? And this question is to be answered with the facts in mind that Church held one share of defendant's stock; that Ross

Clarke held one share; that his wife, Anna W. Clarke, held the remainder, 48 shares; that these three persons were named as the first board of directors in the articles; that Mr. Church acted as, and assumed to be, the president of the corporation; and that Mr. Clarke acted as, and assumed to be, the secretary and treasurer. Mrs. Clarke had been in some way named as vice president, but it was not shown that she was advised of the honor, or ever acted as such. These facts and these relations demand of us a close scrutiny as to the assumption agreement, and required of the persons who pretended to act, the highest degree of fairness. Battelle v. N. W. Cement & C. P. Co., 37 Minn. 89, 33 N. W. 327.

The articles of incorporation of defendant company were executed and filed October 29, to take effect November 21, 1896. Just before this, there had been, according to the testimony in plaintiff's behalf, a conversation between Mr. Church and Mr. Clarke, in which the latter promised that what was then due on account of this agreement as to the $50 per month, then amounting to $600, should be assumed and paid by the corporation. There was also some conversation between plaintiff, Mrs Church, and Clarke, in which Clarke stated that he had made such an agreement with Mr. Church, and that Church should continue to receive a salary of $125 per month, of which $75 should be paid in cash each month, and the balance should be credited as before.

This was nothing more than a promoter's promise, and was of no validity as against the corporation thereafter brought into life. It could not be bound by the promise, for it could have no agent to act in its behalf before it had an existence. Battelle v. N. W. Cement & C. P. Co., supra; McArthur v. Times Printing Co., 48 Minn. 319, 51 N. W. 216.

Nor does counsel claim that, taken by itself, there was a promise, either as to the past or future, which would bind the contemplated corporation. But the contention is that the evidence in some manner discloses that the promise or agreement made in advance by the promoter was afterwards adopted, expressly or by implication, by the corporation, became its engagement, and as valid as if it had never been thought of until the corporation was organized. It is true that this corporation could adopt the promise and agree-

ment of the promoter, and bind itself to the same extent as it could be bound upon a similar, but purely original, engagement.

The only evidence tending to show an adoption of the promise or agreement by the corporation was that, soon after the organization, Church, who kept the books both before and after November 2, asked Clarke if the old business should be balanced, and an entry made in the journal of the change in affairs, whereupon the latter replied that this was unnecessary;

"Let it run just the same; we assume all the liabilities of the old concern."

At most, this was nothing but a conversation between the president of the corporation and its secretary and treasurer, in respect to an indebtedness of the latter, in the payment of which the former was vitally interested. Its object was to bind the corporation, in which both of these persons had an interest, amounting to 4 per cent. of the stock shares, and to appropriate its funds to the payment of the debt of one of them, and, to all intents and purposes, due to the other. It had not been shown that the corporation was under any legal obligation to pay this debt, or that it had received any consideration for a promise to pay.

The other stockholder, holding 96 per cent of the capital stock, knew nothing of the transaction, and had never heard of the indebtedness, or of any effort on the part of Church or Clarke to saddle the claim upon the corporation. And it stands conceded that the directors, as a board, never assumed this or any other obligation of the business predecessor of the corporation. It was shown that, out of the assets of defendant, some of the liabilities, existing at its incorporation, were paid, either by Church or Clarke; but this had no tendency to show an assumption of the amount now in controversy by such corporation.

An agreement of this kind, if actually made, would have been a fraud upon the corporation, and especially would it have been a fraudulent and forbidden transaction as to the other shareholder, Mrs. Clarke. The two officers before mentioned, of defendant corporation, could not divert its assets from their legitimate purposes, that one or both might be benefited. The corporation had no in-

terest in the payment of Ross Clarke's debt. It had received no consideration for the attempted assumption; and the holder of 48 of the 50 shares of its capital stock could not be plundered by the consummation of such a scheme.

Nor is there a particle of merit in the contention of plaintiff's counsel that, because Mrs. Clarke failed to disapprove the assumption of her husband's indebtedness within a reasonable time after she should have discovered or known of it had she exercised ordinary diligence or prudence respecting the corporate affairs, she is bound by such assumption as fully as if it had been duly authorized by the board of directors upon a full and adequate consideration. Ordinary prudence and diligence in regard to the affairs of the corporation would not have disclosed the fact that the two persons who were managing its business had entered into such an agreement, for it existed entirely in the verbal understanding before mentioned. It was in the minds, perhaps, of those who participated in the conversation, and no one would demand of Mrs. Clarke that she search it out from these receptacles. Nothing appeared upon the books kept by Church which would inform her of such a transaction.

As before stated, Mrs. Church had been credited $50 each month, in what was known, on the books kept prior to the incorporation, as the "investment account," and the total of this credit amounted to $600 when the articles were signed. Thereafter, and for the next six months, the credit was given to Mrs. Church in the same account. Nothing more or different in reference to the matter was entered on the books of the corporation; and, had Mrs. Clarke made a critical examination of these and other entries on the books, she would have discovered, at most, that Mr. Church was being paid a salary of $125 per month, of which $50 was being credited to Mrs. Church each month, and that this had been done monthly for one year prior to the incorporation. In no way would this convey to her the slightest knowledge of the alleged assumption of her husband's liability or indebtedness.

Summing up the situation then, and according to counsel's assertion that Mr. Church was working on a salary for Mr. Clarke, that a complete and perfect assignment of the sum of $600 was

made to this plaintiff, and that the right of action accrued prior to the bringing of this suit, we find that the assets of the concern, doing business for one year prior to November 1, 1896, belonged solely to Ross Clarke; that neither Mr. nor Mrs. Church had any lien upon any part thereof, but that one or the other had a personal claim against him, growing out of the contract, and nothing more; that the latter had the right and power to convey these assets as he pleased; that he did convey to the corporation; and that there was no evidence upon which to base a finding of an assumption by the latter, founded upon a consideration or otherwise.

We must conclude that that part of the verdict which represented the $600 claim was not justified. It was without evidence to support it.

We will now refer, briefly, to the evidence on which must have been based that part of the verdict which represents the amount due on account of salary earned by Mr. Church subsequent to the incorporation. That he was one of the stockholders, and also acting as president of the corporation, would not prevent his receiving a salary for his services; but he could not use his position to his own advantage, or to the disadvantage of the corporation when dealing with it; nor could he bind the latter to pay him a greater salary than his services were fairly and reasonably worth, and the court so charged the jury.

There was evidence from which the jury was warranted in finding that Ross Clarke represented Mrs. Clarke in managing the corporate business, and also that, after the corporation was formed, he agreed that Church should receive a monthly salary of $125 per month, of which $50 should be credited to the plaintiff. Mrs. Clarke knew that Church was working for the corporation, and, as before stated, the account books showed that he was being paid $75 per month in cash, on account of salary, and that his wife was being credited with $50 each month on the same account. These books were open to Mrs. Clarke, and, in the exercise of ordinary diligence and prudence, it was incumbent upon her to examine them within a reasonable time, or she would be bound by their contents in respect to Church's salary. Looking at the evidence

from either standpoint, it supports the verdict as to all in excess of $600 and interest thereon.

This disposes of the assignments of error in relation to the merits of the case, but there are several assignments as to rulings made upon the trial, and as to the charge. But one of these needs consideration. Against defendant's objection, Mr. Church was permitted to relate private conversations had with his wife, the plaintiff, at their home, in respect to an incorporation of the business, the legal effect it might have upon her claim under the contract, and upon his earnings thereunder in the future, in which conversations he told her that he was to receive, and was receiving, the same compensation from the corporation as he had from Mr. Clarke. All of the conversation was hearsay, and ought not to have been received for any purpose; and that which bore upon what salary he was to receive, or was actually receiving, from the defendant, was so objectionable that the assignment of error as to the same was well taken.

The order denying a new trial is reversed.