## STROUSE et al. v. SYLVESTER et al.

### S. F. No. 1834; November 8, 1901.

#### 66 Pac. 660.

**New Trial.—On Appeal from an Order Denying a Motion** for a new trial, where the judgment rendered is not appealed from, the sufficiency of findings to support such judgment will not be considered.

**New Trial.—On an Appeal from an Order Denying a Motion** for a new trial, conclusions of law are not reviewable.

**Corporation—Salaries of Directors—Fraud.—The By-laws of a** Mining Corporation authorized the directors to fix salaries. H., a stockholder, contracted with two others for a transfer of their stock to him for four years, without power of sale. Having thus become a majority stockholder, he presented to his brother, A., and to personal friends, M. and C., five shares, each, of·his own stock. M. was in the personal employ of H. At the stockholders' meeting shortly ensuing, H., A. and M. were elected directors, and the board ·was organized by the election of H. as president, M. as secretary and treasurer, and A. as vice-president. Later another director was removed, and C. chosen in his place. On motion of A., seconded by M., H. was given a salary of $250 per month as president, and on motion of C., M. was given a like amount. The minutes showed that both motions were carried unanimously, but later interlineations showed that H. did not vote in the first instance nor M. in the second. H. paid assessment No. 4 by offsetting his salary as president, and purchased delinquent stock in the same manner. He borrowed M.'s salary from him, giving a note, without interest, payable when the mine became productive. On inquiry by S., an innocent director, as to the payment of assessment No. 4, H. said: "The cat is out of the bag. I suppose S. will be mad, but I had to do it. It cost a good deal to get control of the mine, and I am king of the situation. Crack your whip." Held, that the evidence was sufficient to show that the salaries voted H. and M. were a fraud on the corporation, and that their use by H. as offsets to his liabilities was ineffectual as payment. Assessment No. 5 was void as being made in bad faith and as violating Civil Code, section 333, which provides that no assessment must be levied while any portion of a previous one remains unpaid, unless the power of the corporation has been used for its collection, since the offsetting of the fraudulent salaries against assessment No. 4 could not constitute payment· as required by the statute.[1]

---

[1] **Cited** with approval by the court in Booth v. Summit Coal Co., 55 Wash. 174, 19 Ann. Cas. 1255, 104 Pac. 210, where for a raise of salary, procured by a trustee of a corporation, among other alleged fraudulent practices, it was held that a stockholder was entitled to an accounting and the appointment ·of a receiver.

APPEAL from Superior Court, City and County of San Francisco; Jas. M. Troutt, Judge.

Action by Mark Strouse and others against Henry Sylvester and others. Mark Strouse having died after judgment in favor of plaintiffs, his executrix was substituted as plaintiff. From an order denying a new trial defendants appeal. Affirmed.

C. W. Cross for appellants; Deal, Tauszky & Wells for respondents.

HAYNES, C.—This action was brought by Mark Strouse, a director, and twelve others, stockholders in the Gold Ridge Consolidated Mining and Milling Company, against said corporation and Henry Sylvester, Albert J. Sylvester, William F. McLaughlin and Ira H. Chapman, who, with plaintiff Strouse, constituted the board of directors of said corporation. Said Mark Strouse having died, after judgment his executrix was substituted as plaintiff. A demand was duly made upon the board of directors to bring the action, and, the board having refused to do so, the action is prosecuted by the plaintiffs for the benefit of the corporation. No question is made as to their right to do so. The plaintiffs had findings and judgment, and defendants appeal from an order denying their motion for a new trial.

No question is made as to the rulings of the court during the progress of the trial. There is no appeal from the judgment, and hence the sufficiency of the findings to support it cannot be considered. Some question is made by appellant as to the conclusions of law, but upon an appeal from an order denying a new trial the conclusions of law are not reviewable: Bode v. Lee, 102 Cal. 586, 36 Pac. 936; Owens v. Water Co., 131 Cal. 530, 63 Pac. 850, 64 Pac. 253. The only question, therefore, is as to the sufficiency of the evidence to justify the findings. The Gold Ridge Consolidated Mining Company was incorporated and organized in January, 1894. Its capital stock consisted of 100,000 shares, of the par value of $100 each. It owned several mining claims in Nevada county, in this state, which then, and at the time this case was tried in the court below, were only partially developed, and were wholly unproductive. With the excep-

tion of 15,000 shares of treasury stock, sold at ten cents per share, it had no resources wherewith to meet its obligations other than assessments upon its capital stock. Prior to 1896 neither of the directors named as defendants in this action had served as directors of said corporation. In 1896 the regular time for holding the stockholders' meeting for the election of directors was May 14th. On May 4, 1896, the defendant Henry Sylvester owned 17,073 shares of said stock, one Phelan owned 19,000 shares, and one Lillie owned 15,205 shares, and on that day these three stockholders entered into a contract by which Phelan and Lillie were to transfer their said stock to said Henry Sylvester, he to vote and control the same for all purposes for the term of four years, but without the power of sale. These shares aggregated 51,278, a majority of the whole, and gave him the power to control absolutely, for that time, all elections of directors. On May 12th, Phelan and Lillie surrendered their stock to Sylvester, and a new certificate was issued to him therefor, and on that day he caused to be issued of his own stock five shares to each of the defendants McLaughlin, A. J. Sylvester and Ira H. Chapman. Prior to this neither of the three owned any stock in said corporation, nor has either of them since acquired any other shares therein. The annual meeting for the election of directors was to have been held the second day after said shares were issued to said last-named defendants, but it was postponed until June 4th, and was held on that day, and resulted in the election of Mark Strouse (one of the plaintiffs) and B. F. Ricker, members of the preceding board, and the defendants Henry Sylvester, his brother, A. J. Sylvester, and W. F. McLaughlin, and on the same day the board organized by the election of Henry Sylvester as president, McLaughlin as secretary and treasurer, and A. J. Sylvester vice-president. On August 4th, at a meeting of the board, on the motion of A. J. Sylvester, Ricker was removed from the board on the ground that no shares were standing in his name on the books, and Ira H. Chapman was elected in his place, and, being present, immediately took his seat. At the same meeting, on motion of A. J. Sylvester, seconded by McLaughlin, it was ordered that the president receive a salary of $250 per month, beginning from that date, and on motion by Chapman it was ordered that McLaughlin receive

from that date a salary of $250 per month, the minutes showing that both motions were carried unanimously. At a later date, as shown by the testimony of Mr. Nichol, the words, in the first case, "Dr. H. Sylvester not voting," and in the second case, "Wm. F. McLaughlin not voting," were interlined. Prior to these proceedings an assessment (No. 4) became delinquent, and after one or more postponements the sale of delinquent stock took place September 30, 1896, and Henry Sylvester bid the amount of the assessment and costs on 21,310 shares thereof (amounting to $549.75) therefor, and the same were struck off to him. The amount of the assessment upon his own stock (17,073 shares), amounting to $426.82, he claimed to have paid. The complaint charged that he made it falsely to appear from the books that he paid the assessment upon his own shares, and that he also paid the amount of his bid for the said 21,310 shares; and the court found that he did not pay the assessment upon his own stock, nor his bid upon the 21,310 shares, nor any part of either. It was further found by the court, in substance, that the five shares transferred by Henry Sylvester severally to McLaughlin, Chapman and A. J. Sylvester was a gift to them for the purpose of qualifying them to become directors; that McLaughlin was in the employment of Henry Sylvester on a salary and certain commissions on business brought by him to Henry Sylvester in his profession, both being dentists; that Chapman, also a dentist, was a friend and a former student in his office, and A. J. Sylvester was his brother; that the salary voted for the president and for the secretary and treasurer of $250 per month to each was for the purpose of defrauding the corporation and the other stockholders; that in the adoption of these resolutions giving the president and secretary each a salary both participated, and that they were not passed in good faith and for the benefit of the corporation; that the resolution giving the secretary and treasurer a salary of $250 per month was not passed for his benefit, but for the benefit of the president, giving him, in effect, $500 per month.

We think the evidence sustains these findings. McLaughlin testified that he received $500 out of the treasury; that he took it himself out of what came in; that he took $250 on two different occasions; that he did not remember what

he did with this $500; that he gave no part of it to the president that he remembered; that he received this $500 in gold and silver; that the money he took to pay himself came from the assessment (No. 4); that he thought there was no money on hand before the sale, which took place September 30th. A little later he testified that he drew $250 on September 28th, and $250 on October 2d, and that he could not tell what became of the money, and that the president drew $250 at the same time he did. McLaughlin further testified that the assessment upon Dr. Sylvester's stock was not paid in cash; that it was offset against the salary of the president and secretary, and that the first $250 of his salary went toward paying assessment No. 4 on the president's stock; that he lent it to him for that purpose, and that Sylvester gave his note for it, to be paid, without interest, when the mine is sold or is paying; that that $250 was not paid to him in cash; that he was supposed to have drawn it—that is, on the books the company was charged with the salaries of the president and secretary and credited with the amount of the assessment upon the president's stock and the amount bid by him for the 21,310 shares which were struck off to him at the sale of delinquent stock, amounting together to $976.57½. No money passed in this transaction. Sylvester had the benefit of the whole salary of himself and the secretary for two months, amounting to $1,000, while all the secretary had to show for his half was a note, without interest, for $250, to be paid when the mines should be sold or prove profitable. On October 20th, another assessment was ordered. Some time between that date and November 12th, Mr. Nichol, the bookkeeper for Mr. Strouse, called on the president to obtain the result of assessment No. 4, and the expense account of the company, and was informed that at the sale of delinquent stock on September 30th 3,529 shares were bid in for the company; that the assessment produced in money $1,398.24, including the assessment upon his stock and the amount bid on the 21,310 shares bought by him at the sale; and the net result was that, after paying the salaries of the president and secretary for two months ending four days after the sale, there was a balance of $398.24 to meet contingent expenses and develop the mines. The testimony shows that but two men were employed at the mines, while the corporation was pay-

ing salaries to its president and secretary at the rate of $6,000 per annum. It is inconceivable that Sylvester, who owned nearly one-fifth of the stock, would consent to the payment of a salary of $3,000 a year to an inexperienced secretary, especially when he was already paying him a salary for his services in his dental office. The evidence is quite sufficient to show that these three directors, McLaughlin, Chapman and A. J. Sylvester, who had no interest in the corporation until two days before the time fixed for the election of directors, and who were made directors by Henry Sylvester, who had just acquired the right to vote a majority of the stock, were wholly subservient to him, and were made directors to promote his interests; that these salaries were voted to enable him to pay the assessment on his own stock and to purchase other delinquent stock at the expense of the corporation, and thus enable him to acquire, by repeated assessments, such delinquent stock as might from time to time be sold; and under such management it is highly probable that increasing quantities of stock would be sold under successive assessments, and what Sylvester could not purchase would go into the treasury, where it could not vote. At the time of Mr. Nichol's visit, above mentioned, he first learned of the salaries having been voted, and objected to it, and Sylvester replied: "Well, the cat is out of the bag. I suppose Strouse will be mad, but I had to do it; that it had cost him a good deal to get control of the mine, and he was king of the situation. Crack your whip." We think the evidence fully justifies the finding that the resolutions giving these salaries were fraudulent, and made for the benefit and profit of Henry Sylvester by means of a subservient board selected and elected by him; and, while there is evidence tending to show that he did not vote for the resolution giving him a salary, it was procured by him through his control of the other members of the board. The fact that the by-laws authorized the board to fix the salaries of the officers does not cleanse the transaction.

As to assessment No. 5, levied on October 20th, the court found that it was not levied in good faith, and that it was levied while assessment No. 4 on the 17,073 shares owned by Sylvester, and on the 21,310 shares bid in by him, remained unpaid. The evidence tending to show the want of

good faith has been sufficiently noticed. As to the second ground of invalidity, section 333 of the Civil Code provides that "no assessment must be levied while any portion of a previous one remains unpaid," unless the power of the corporation has been exercised for its collection. If Sylvester had paid in cash his assessment and the amount of his bid for the shares struck off to him, there would have been in the treasury $976.57½ more than was received from assessment No. 4, and it does not appear that in such case there would have been any necessity for assessment No. 5. If, as the court found, the resolutions allowing the salaries were a fraud upon the corporation, Sylvester had no right to offset such salaries against the assessment of his stock, or his bid upon other stock struck off to him, and as between him and the corporation his assessment and bid were unpaid.

I advise that the order appealed from be affirmed.

We concur: Gray, C.; Cooper, C.

PER CURIAM.—For the reasons given in the foregoing opinion the order appealed from is affirmed.