CROCKER, Appellant, v. CUMBERLAND MINING & MILL-
ING COMPANY, Respondent.

(139 N. W. 783.)

1.   **Exceptions—Findings of Fact—Entering Findings Without Notice.**

Findings of fact by trial court are considered excepted to; and the making and entering of findings of fact without notice to opposite party, and without giving him an opportunity to except to same, or to propose other findings, is not prejudicial error.

**2.   Corporations—Contracts With Directors—Validity.**

While a fair and equitable contract between a corporation and a director, where the corporation was represented by a majority of its directors acting under no controlling influence on the part of the contracting director, is binding upon it, yet if the contract is unfair, it will not be binding; and even if fair, it will be void unless a majority of independent directors did not represent the corporation.

**3.   Same—Contract for Compensation.**

A contract between a corporation and a director for his compensation is not binding on the corporation, if carried by vote of such director, or of another director under his controlling influence, or where, without the presence of such directors a quorum of the directorate would not have existed.

(Opinion filed February 10, 1913.   Rehearing denied April 22, 1913.)

Appeal from Circuit Court, Pennington County. Hon. Levi McGee, Judge.

Action by Frank C. Crocker against the Cumberland Mining & Milling Company. From a judgment for defendant and from an order denying a new trial, plaintiff appeals. Affirmed.

*Samuel C. Polley,* for Appellant.

The court erred in making and entering findings of fact and conclusions of law; and entering judgment without the said findings having been served on plaintiff, and without plaintiff's knowledge; or giving plaintiff an opportunity to be present, or to be heard at the time of making said findings and entering said judgment. (Transcript, page 359.) Section 279, Code of Civil Procedure

This is to give the opposite party an opportunity to prepare and submit other findings, to make suggestions, take exceptions if so desired, to take whatever steps he may see fit to protect his interests. This is a valuable right, given by statute, and no court or party has a right to ignore it.   It is more than a mere question of practice.

They were named as directors in the original articles of incorporation, and thus became the legal board, regardless of whether they held any stock or not, and after the board was thus created its members remained the legal board until their successors were

elected.    Welch v. Importers & Traders Nat'l. Bank, 25 N. E. (N. Y.) 269.

It is also certain that no steps were ever taken by the board of directors, or any stockholder, to repudiate plaintiff's contract. This would amount to a ratification and make the contract legal, even though there had been no contract in the beginning.   Kelly v. Newburyport, 6 N. E. 745; Alex. v. Culbertson Co., 85 N. W. 283; Burgess v. St. Louis Co. R. R. Co., 12 S. W. (Mo.) 1050.

The fact that this contract was one between a director and the corporation did not render it void.   It is true that courts scrutinize such contracts more closely than when made with a stranger, but where they are fairly entered into and are within the authorized scope of the company, they are as valid as any contract. While some courts take the view that such contracts are void per se our court recognizes the principle that a director of a corporation may enter into a contract of employment with the corporation, and if the contract is one that is authorized by the company's charter and is carried out in good faith it is binding upon the company.   Calkins v. Seabury Calkins Consol. Min. Co., 5 S. D. 299.

Such contracts are presumably valid and will stand until overthrown in a proper proceeding by a corporation or its stockholders, and the burden of showing their unfairness rests upon the challenging party.   10 Cyc. 810, and cases cited.

## IN REPLY.

There is nothing in any of these resolutions to indicate that plaintiff was to receive his pay only during such times as the mine was in actual operation, or that others were at work on the property.   The resolutions, taken as they are, indicate that his pay was to be continuous.   And one resolution, August 14th, 1905, declares that up to that time at least, plaintiff had devoted all of his time to the company's business.   The entries on the cash book show that his pay was continuous, and it is not possible that any stockholder of the company did not know that he was receiving his pay right along, whether any one else was at work or not.

In this case plaintiff is entitled to recover his full ten dollars per day.   This the court found to be the reasonable value of his services.   This was, also, the amount fixed by contract between the plaintiff and defendant and he would be entitled to recover that amount even though it had not been specifically agreed upon

when the contract was originally made. This amount was paid the plaintiff for years. It was acquiesced in by the stockholders and directors without objection for a sufficient length of time to amount to a ratification even though it had not been agreed upon in advance. Warren et al. v. Para Rubber Shoe Co. et al., 44 N. E. 112 (Mass.)

This case should be governed by the rule laid down in Calkins v. Seabury-Calkins Mining Company, 5. S. D. 299.

It seems as though the words "ten dollars per day," are plain enough so that judicial construction is unnecessary. We submit that these words, used in this contract, are to be construed according to the general rules of construction, and by giving them the meaning that the parties themselves gave them. In this case it is plain that "ten dollars per day" meant that the superintendent was to receive ten dollars per day for all time put in at the mine, regardless of whether any one else was at work there or not.

*Nichols & Wilson,* and *Frank D. Bangs,* for Respondent.

As to the right of Crocker to recover a salary based on these resolutions, we submit to the court that the evidence conclusively shows that he was the owner of 8-15 of the capital stock; that as the president and general manager, and by reason of exercising all of the functions of secretary and treasurer in addition to being a member of the board of directors, he held a fiduciary relation to the company. That by reason of his holdings in the company and of his official connection with it,, he selected its board of directors, the majority of whom were directors merely in name, always under his influence and who acted solely for his benefit. The stock of two of these directors, his son and Mr. Madill, were presented to them by Crocker as a gift; for which the company never received any consideration; that it was treasury stock; that Crocker never charged himself with the stock so given; that the certificates for this stock were never in fact delivered to the parties, and now appear in the stock book cancelled, and bearing a date not according to the the fact but filled out after May 19th, 1902, as is conclusively shown by the certificate numbers.

At the time many of these resolutions were passed, the Board consisted of the plaintiff, his son, Madill and Graham. Under the evidence, it appears that the plaintiff and Graham did not vote upon the resolutions fixing the plaintiff's salary. If then Jackson Crock-

er and Madill were disqualified and the resolutions were passed by only their votes, the resolutions were never legally adopted and there exists an entire absence of any action by the board of directors on the question of salary.

The only person who was qualified to vote upon the question of salary was Graham, and director Brown at the time he was a member. A quorum never consisted of less than three, and a portion of the time four were required, so that there never was a time in the history of these transactions when there were enough directors present, who were qualified to act in the matter of Crocker's salary, to constitute a quorum, and for that reason, in addition to the other, the passage of these resolutions was illegal, and they are not binding upon the company.

If one director, whose presence is necessary to constitute a quorum or whose vote is necessary to constitute a majority of the quorum upon a common resolution, is disqualified by reason of his interest, then the act done is invalid and voidable at the election of the corporation. 10th Cyc. 777, Curtain v. Salmon; R. & Co., 62nd Pac., 552.

As to such resolution, he is not a director but a stranger.

A director cannot be counted in forming a quorum for the consideration of matters with regard to which he is not entitled to vote. Thompson on Corporations, Section 1150.

A resolution passed at a meeting of the directors at which a director, having a personal interest, voted will be voidable at the instance of the corporation or shareholders without regard to its fairness, provided the vote of such director was necessary to the result. 10 Cyc. 790; Graves v. Mona & Company, 22nd Pac. 665, (Cal.); Troy Mining Company v. White, 74th N. W. R. 238; Smith v. Los Angeles Assn., 20th Pac. 677, (Cal.)

An officer cannot even in connection with other officers, bind the corporation to pay him a greater salary than his services are fairly and reasonably worth, such a contract will be scrutinized with great care. Thompson on Corporations, Sec. 1748; Wayne Pipe Company v. Hammons, 27th N. E. 487 (Ind.); Quintance v. Farmers Mutual Aid Association, 77th S. W. 1121, (Ky.); Camden Land Co., v. Lewis, 63rd Atl. 523 (Me.), Church v. Church Cementico Co., 77th N. W. 548, (Minn.)

A resolution fixing the salary of an officer will be illegal where it is carried by the vote of the officer or where having a controlling interest, it is produced by his influence. "It makes no difference that there are enough directors voting for the resolution without counting the officer, if it is really his act and the product of his influence." Thompson on Corporations, Sec. 1748; McNulta v. Green Belt Bk., 45 N. E. 954 (Ill.); Adams v. Burke, 66 N. E. 235 (Ill.); Crichton v. Webb Press Co., 36 So. 926; 67 L. R. A. 76.

Board of directors of corporations have no power to give the officers unreasonable or excessive salaries for their services. Thompson on Corporations, Sec. 1762; Decatur, etc., Land Co., v. Palm, 21 So. 315, 59 Am. St. 140 (Ala.).

Officers who own the controlling stock and who elect themselves to office are not permitted to vote themselves excessive salaries. Miner v. Bell Isle Ice Co., 53rd N. W. 218, (Mich.); Hardee v. Sunset Oil Co., 56th Federal 51; Strouse v. Sylvester, 66 Pac. 660, (Cal.).

A director or executive officer who claims compensation for services must prove either a prior agreement or resolution providing for the performance of the services and the compensation, or must prove that such services were out of the scope of the regular duties of his office, and that the services were performed under circumstances sufficient to show that it was understood by the corporation, and that it was intended, on his part, that the services were to be paid for by the corporation. Thompson on Corporations, 1744 and cases cited.

The wrongful allowance or improper payment of compensation to an officer, will not prevent the corporation, or a stockholder, to compel the officer to refund the money so paid. Generally where money is paid or voted to an officer as compensation in the absence of a valid agreement made in advance, the payment is wrongful and may be recovered. This rule rests upon the same foundation as that which compels the restoration of corporate funds or property when wasted or squandered by the directors, or when received by third persons with knowledge of the want of power to transfer it. So, compensation paid an officer for past services, without a prior and valid provision or contract, is without consideration and can be recovered. Thompson on Corporations, 1763; Danville, etc., R. Co., v. Kase, 39 Atl. 301 (Pa.).

A stockholder may compel a president to account for money appropriated by him on his salary, Id. Blair v. Telegram Newspaper Co., 51 N. E. 1080, (Mass.).

It remains for the court to determine what construction shall be given the words "'ten dollars per day." We submit that the proper construction, in view of its reference to wages, for services, would be that it means $10.00 for each day of work; otherwise the compensation would have been fixed on a basis of an annual or monthly salary.

We assume that the court below took the view that while the resolutions were invalid that yet under the issue of accounting, it should allow the plaintiff fair and reasonable compensation for his own services as a legitimate disbursement of the company's funds, and it was under this theory that the court must have determined that the compensation of the plaintiff per day while the mine was in active operation was fixed at $10.00, and at other times at $50.00 per month. Under the proof it was undisputed that the plaintiff did nothing nor was there anything to do when the mine was not active.

There is absolutely no suggestion in the record that the board of directors ever attempted to ratify these contracts with Crocker. If they had attempted such an act, it would have had no more validity than original contract, for the board was the same, and acting always in the special interest of Crocker. Neither would the acquiescence of any such a board amount to a ratification.

No ratification is pleaded by the plaintiff, either in the reply or elsewhere. The question of ratification therefore is not in issue in this case.

Where illegal conduct on the part of the officers or directors is shown, courts do not hesitate to render assistance. The right referred to is not limited to technical fraud, but includes breaches of trust and negligence of corporate duties. One species of fraud, which has frequently been called in question, is that of excessive salaries taken or secured by corporate officers under pretense of some authority conferred by a board of directors. When such facts are shown to exist, courts have no hesitancy in compelling the restoration of funds illegally taken. Thompson on Corportations, 4507, and cases cited in note 51, also Sec. 4510 and cases cited in notes 65-67.

WHITING, J.   This action was brought to recover sums claimed to be due for services rendered defendant by plaintiff during a term of several years, during which time plaintiff was the president and general manager of defendant.   Plaintiff obtained a judgment by default against the defendant, which judgment was afterwards opened up and the defendant allowed to answer herein. Such answer denied the express contract set forth by the plaintiff, and denied generally and specifically the claims of plaintiff to the amounts claimed under plaintiff's several causes of action, and, by way of affirmative defense, alleged that plaintiff had received for defendant large sums of money, and had failed to account for the same, and that an accounting would show a large balance due the defendant corporation from the plaintiff.   Defendant asked that such an accounting he had, and for judgment for such sum as should be found due it.   To this answer a reply was interposed. The cause was tried to the court, without a jury, and findings made and entered in favor of the defendant, upon which findings conclusions of law were entered and judgment rendered for defendant, from which judgment and order denying a new trial the plaintiff has appealed.

[1]   The appellant complains, in that the trial court made and entered findings of fact without notice to him and without giving him an opportunity to except to the same, or to propose other findings and conclusions.   This court will consider such findings and conclusions excepted to thus putting the appellant in a position where he cannot be prejudiced by the alleged error of which he complains.   The appellant assigns a large number of alleged errors in the court's rulings upon the admission and rejection of evidence, and specifies numerous particulars wherein he claims the evidence insufficient to support the several findings.   In the absence of any printed abstract, we have carefully gone over the entire record herein, and believe that we have a clear understanding of the merits of this case as the same is revealed by such record.   We have been unable to find any reversible error in the ruling of the court upon the admission or rejection of evidence, and we believe that the evidence received fully warrants the findings of the trial court.

The appellant bases his claims upon certain resolutions which, it is claimed, were passed by the directors of respondent corporation at some time during each year of the period from the organiza-

tion of said corporation down to the year 1910, and which resolutions each purported to grant to him a salary of $10 per day as general manager of said corporation. The respondent claims that $10 per day for each and every day, regardless of whether its mine was in operation or not, was an excessive and unreasonable allowance for salary; that its stockholders were willfully kept in ignorance of the attempt on the part of the board of directors to allow such salary; that appellant had agreed and represented to the stockholders that no officer was receiving any salary, or would receive any salary, until the corporation had been put upon a paying basis, which conditions had never existed; and also claims that, even if there were resolutions passed as maintained by appellant, it was the intent and purport thereof that appellant be allowed $10 per day as salary only for such days as the mine was in operation. It is conceded that appellant was at all times, the holder of a majority of the stock of said corporation, and that he, his son, and one Madill were, at all times, members of the board of directors of said corporation. This board, under the by-laws, was composed of four members, though during a part of the time covered by appellant's claims, there was an attempt to add to said board two more members.

It is unnecessary to recite in detail the findings of the trial court. Among other things, the court found that appellant's son and Madill were selected and elected to the board of directors by appellant for the purpose of advancing appellant's interests; that they acted under the influence and suggestion of appellant; that they never were the actual owners or holders of any stock in the corporation, and never paid any valuable consideration for any stock; and that they were directors merely in name and for the sole benefit of appellant. It is undisputed that these directors received their stock without consideration therefor, the same being given them by appellant out of capital stock of the corporation not belonging to appellant; and it also appears that no certificates of stock were ever delivered to Madill or to appellant's son. Certificates made out in their names appear in the stock book, but they were never detached therefrom; nor were they ever signed by the officers of the company. The court found that the several resolutions allowing a salary to appellant were passed at the request and direction of appellant, and by the votes of his son and Madill, and that their

10—Vol. 31, S. D.

votes were necessary to pass said resolutions. It appears that there never was a quorum of the directors of said corporation present, unless there be counted, as making up said quorum, the appellant, his son, and Madill, or some one or two thereof. It also appears that at the directors' meetings when nonresident directors were present no action was had on the question of salary of general manager. The court found that $10 a day was a reasonable allowance to appellant as salary for those days when the mine was in operation, and that $50 a month was a reasonable allowance for his services at all other times; that the resolutions, as passed by said directors, were, under the circumstances surrounding the company and the services to be rendered, unfair, unreasonable, and unconscionable. The court also found that appellant had not faithfully performed the trust imposed upon him as president and general manager of said corporation, in that he failed to make certain reports. The court made findings in relation to the time for which appellant should be allowed a salary of $10 per day and the time for which he should receive $50 per month, as well as to the amount of money received and disbursed by him. It found that he had been in truth and fact, not only the president and general manager of the corporation, but, during most of its existence, the real secretary and treasurer thereof; and it found a balance due from appellant to the corporation.

[2, 3] The appellant contends that the court's conclusions of law were unsupported by the findings. These conclusions were to the effect that appellant was not entitled to recover; that the alleged contracts growing out of the resolutions allowing salary were illegal and void; that there was a certain sum due the corporation under the accounting; and that the default judgment should be vacated. The appellant is certainly in error in such contention. The law is that, while a director may enter into a binding contract with the corporation, when such contract is in all things fair and equitable, and the corporation is represented by a majority of its directors, each of whom is acting as a free agent and under no controlling influence or restraint on the part of the contracting director, yet, even if there is such majority of free and independent directors acting for the corporation, such contract will not be binding upon the corporation if it is unfair or unequitable; and, furthermore, no matter how fair and equitable the contract may be,

it will be void, unless there is a majority of free and independent directors acting for such corporation. It follows that, when a resolution is passed in which one of the directors is interested, if it is passed by the vote of such director, or by the vote of any other director who is under his controlling influence, without which vote or votes there would not have been a majority in favor of said resolution, or if, without the presence of such interested director and such directors as may be under his influence and control, there would not have been left a quorum of the board of directors, then, in either of such cases, such resolution would be absolutely void as against the corporation.

In the case of Camden Land Co. v. Lewis, 101 Me. 78, 63 Atl. 523, a case very similar in many respects to the case at bar, the court, in speaking of certain directors who, in their relations to the controlling officer and director were in much the same position as appellant's son and Madill were to him, said: "It is very evident that Adams and Stephenson were in the employ of Lewis, and acting solely by his direction. It is alleged in one of the bills that they became directors at his solicitation and for his accommodation and voting as he directed. They were there to represent and act for him, and had no real interest in the corporation or its purposes otherwise. Although cash appears by the records to have been paid for their shares, under the circumstances we think it should not be found that they paid their own cash. They were what the cases call 'nominees' of Lewis, and their stock interests are not to be considered. Old Dominion Copper Co. v. Bigelow, 188 Mass. 315, 74 N. E. 653 [108 Am. St. Rep. 479]."

In Adams v. Burke, 201 Ill. 395, 66 N. E. 235, the court says: "The law is that, where a salary or compensation is voted to an officer, the resolution is illegal if it is carried by his vote or produced by his influence, where he has a controlling interest. Mc-Nulta v. Corn Belt Bank, 164 Ill. 427, 45 N. E. 954, 56 Am. St. Rep. 203; Cook on Stock and Stockholders, § 657. It makes no difference that there are enough directors voting for the resolution without counting the officer, if it is really his act and the product of his influence. In Cook on Stock and Stockholders, supra, it is said: 'And where the chief stockholder, who is the president, induces his "dummies" to vote a large salary to him, the corporation may defeat the action at law to recover it.'"

The following from the words of the court in the case of Miner v. Belle Isle Ice Co., 93 Mich. 110, 53 N. W. 222, 17 L. R. A. 412, are directly applicable to the facts as found by the court in this case: "The present case is clearly within the exception referred to by Campbell, J. Defendant Lorman must be held to have made these contracts with himself. He directed, influenced, and controlled the board. They had no personal interest in the affairs of the company, and exercised, not their own judgment and discretion, but Lorman's will. All the authorities agree that it is essential that the majority of the quorum of a board of directors shall be disinterested in respect to the matters voted upon. I Beach, Corp. 276; Smith v. Association, 78 Cal. 289, 20 Pac. 677 [12 Am. St. Rep. 53]. Where a town board of three are authorized to make a grant to a railroad, and two of them, one being director of the railroad, make the grant, the court will set it aside. San Diego v. Railroad Co., 44 Cal. 106; Bill v. Telegraph Co. [C. C.] 16 Fed. 14. A salary voted to the president by a quorum of three. directors, two being absent, and the president being one of the three, is not enforceable. Copeland v. Manufacturing Co., 47 Hun [N. Y.] 235. Where the chief stockholder, who is president, induces the directors, his dummies, to vote a large salary to him, the corporation may defeat the officer's action at law to recover it. Davis v. Railroad Co. [C. C.] 22 Fed. 883."

We also quote with approval the following from the syllabus to the opinion in the case of Church v. Church Cementico Co., 75 Minn. 85, 77 N. W. 548: "A stockholder in a corporation, and acting as its president, may enter into a salary contract for his services with it; but he cannot use his position, when making such contract, to his own advantage, or to the disadvantage of the corporation; nor can he bind it to pay him a greater salary than his services are reasonably worth; and a contract of this kind between such president and the acting secretary and treasurer of the corporation will be scrutinized with great care."

To the same effect is the following from the case of McNulta v. Corn Belt Bank, 164 Ill. 427, 45 N. E. 954, 56 Am. St. Rep. 203: "The law is that, where a salary or compensation is voted to a director, the vote is illegal, if it is carried only by including the vote of the director who receives the pay or salary. 2 Cook, Stock, Stockh. &. Corp. Law, § 657. Where the chief stockholder, who is

president, induces the directors to vote a large salary to him, the corporation may defeat the officer's action at law to recover it. Id.; also Miner v. Ice Co., 93 Mich. 97, 53 N. W. 218 [17 L. R. A. 412]. Directors cannot vote a salary, much less a large bonus or compensation in addition to a salary, to one of their number, as president, when he takes part in the proceeding, or his vote is essential to the adoption of the resolution. Wickersham v. Crittenden, 93 Cal. 17, 28 Pac. 788, and cases cited; Gridley v. Railway Co., 71 Ill. 200."

We also cite Graves v. Mono Lake Hydraulic Mining Co., 81 Cal. 303, 22 Pac. 665; Curtin v. Salmon River Hydraulic Gold Mining & Ditch Co., 130 Cal. 345, 62 Pac. 552, 80 Am. St. Rep. 132; Smith v. Los. Angeles I. & L. Co-Op. Association, 78 Cal. 289, 20 Pac. 677, 12 Am. St. Rep. 53; Strouse v. Sylvester, 66 Pac. 660.

The judgment and order appealed from are affirmed.

POLLEY, J., having been of counsel, takes no part in this decision.