ROBINSON v. FIRST M. E. CHURCH OF FRANKVILLE ET AL.

1. **Fraudulent Conveyance**: PREFERENCE OF CREDITORS: RULE IN EQUITY. The defendant, the M. E. Church, owned the lot in question, on which was situated its house of worship and parsonage. It was indebted to Litchfield, $122.18, to Lane, $355, and to Aldrich, $300. Litchfield had begun an action to recover his claim, but three days before he obtained judgment, the church conveyed to Aldrich in payment of his claim, that part of the lot on which the parsonage stands, and mortgaged to Lane the other part to secure her claim. Plaintiff claims the property by virtue of a sheriff's deed obtained under the Litchfield judgment, and seeks to set aside the deed to Aldrich, and the mortgage to Lane as fraudulent. Under these facts the court *held* that plaintiff could not recover, because:

   *First:* The church in preferring creditors, did not exhaust its property, it appearing that the portion mortgaged to Lane for $335 was worth at least $3,000.

   *Second:* The plaintiff does not come into court with clean hands, since he seeks to hold property worth $3,500 on a sheriff's deed which cost him only $171.66, and tries to defeat two other creditors holding equally just claims, one for $335, and the other for $300.

*Appeal from Winneshiek Circuit Court.*

THURSDAY, JUNE 15.

ACTION in chancery to set aside and declare void a certain deed, and a mortgage executed by the First Methodist Espis-

copal Church of Frankville, on the ground that they were made with the fraudulent purpose of hindering and delaying its creditors. Upon a trial on the merits plaintiff's petition was dismissed; he now appeals to this court. The facts of the case are fully stated in the opinion of the court.

*Cooley, Fannon & Akers,* for appellant.

*L. Bullis,* for appellee.

BECK, J.—I. The petition alleges among other matters that plaintiff acquired title to lot 22, in the town of Frankville, under a sheriff's sale and deed made pursuant to a judgment against the First Methodist Episcopal Church of Frankville; that just prior to the sale, the church fraudulently, for the purpose of delaying and hindering its creditors, conveyed a part of the lot to Smith Aldrich and executed a mortgage upon the other part to Eveline Lane, to secure $335, and that these conveyances were voluntary and without consideration. It is alleged that Aldrich, conveyed the property deeded to him by the church to Germund Merrill, who had notice of plaintiff's title and took the conveyance without consideration for the purpose of defrauding plaintiff. The petition prays that plaintiff's title be established against the deed and mortgage referred to, and that they be declared void and of no effect. The church, Aldrich, Lane, and Merrill, are made defendants. They answer the petition denying all fraud, and alleging that the conveyances assailed in plaintiff's petition were made in good faith and upon sufficient consideration, and are valid and lawful instruments, and they ask that, by proper decree in this case, it may be so declared, and that they have such other relief as they may be entitled to under the rules of equity. Other allegations of the pleadings need not be here recited.

II. Upon the evidence and admissions of the pleadings, we find the facts of this singular case to be as follows:

1. The First M. E. Church of Frankville, prior to the

transactions involved in this suit, owned the lot in controversy, whereon it had erected a house of worship costing from $6,000 to $7,000, and a parsonage at a cost of $400 or $500. When the church edifice was about to be "dedicated," it was found that an unsatisfied mortgage was upon it, amounting to about $1,400, held by one Teabout. It was thought desirable to remove this incumbrance before "dedication," so that the property would be "free.". Teabout accordingly proposed that he would contribute one-half of the amount of his claim if the balance would be provided for. Thereupon four trustees of the church executed their notes to Teabout for equal portions of the half of the debt, and he canceled his mortgage. Two of the trustees executing the notes were Litchfield and Lane. Teabout understood that in this transaction the trustees made to the church a contribution of the amounts of their respective notes, and that the church was to be released from debt. But it appears that there was some arrangment or understanding that the contribution was made by these trustees depending upon the liberality and generosity of the membership of the church to reimburse the amount they should severally pay.

2. Litchfield afterwards claimed payment from the church, and a settlement or compromise of his claim was made, and the promissory note of the church, by its trustees, was made to him for $133. Upon this note Litchfield afterwards recovered a judgment for $122.18 and $14.45 costs, upon which lot 22, whereon the house of worship and parsonage were situated, was sold to Litchfield for $153.92, being, as we understand it, the amount due upon the execution. In due time a sheriff's deed was executed to Litchfield, who by quit claim deed conveyed the property to plaintiff, Robinson, for the consideration of $171.66.

3. Three days before the judgment was rendered in favor of Litchfield the church by its trustees conveyed that part of the lot upon which the parsonage was situated to Aldrich for

the consideration of $300. Aldrich was the pastor of the church and a balance of his salary was due. He paid a small claim against the church for lumber. The parsonage was conveyed to him in payment of the amounts due upon these claims, which we find are just and true.

4. On the same day the deed to Aldrich was made, the church executed a mortgage to .Mrs. Lane. Her husband was one of the trustees of the church executing the notes to Teabout, and subsequently died. It is shown that she succeeds to all his rights and property. It appears that when Litch-field demanded payment of the church, Mrs. Lane insisted that she should also be paid, and the trustees executed the mortgage to secure her.

5. It is shown that the church edifice cost from $6,000 to $7,000, and we find that it is worth at least $3,000. The plaintiff is the pastor of the Presbyterian Church at Frankville, and the evidence shows that he intends the property in controversy for the use of his own church. It is shown that he estimates it to be of the value of $3,000, and that he stated he should report it to the "Presbyterian Church Board of Extension" as of that value, and from this "board" he expected to receive a part of the sum the property cost him. His statements to this effect are proved, and he does not in his testimony deny having made them. We think the testimony shows that all of the lot in controversy, including both the house of worship and the parsonage, is worth at least $3,500.

6. The defendants, as well as the trustees of the church executing the deed and mortgage to Aldrich and Lane, testify that it was not the purpose of the transactions to defeat or delay Litchfield in the collection of his claim, but the conveyances were made in good faith to pay and secure the claims of the grantees.

III. We are quite clear in our own opinion, however, that the trustees were quite anxious that Aldrich and Lane should have preference to Litchfield. But this is not a fraud as to

Litchfield, and the law will not on that ground alone disturb the conveyances. A debtor may prefer by payment or security a creditor. This is a familiar rule of the law, and in exercising this preference, if he retains enough property to satisfy other creditors, they have no ground of complaint in law, equity or conscience. The church by its deed to Aldrich paid his just claim. It retained property to the value of $3,000 at. least, which cost $6,000 or $7,000. Upon this property it executed a mortgage to secure to Mrs. Lane $355. It owed Litchfield $122.18, which was subsequently increased by costs to $153.92. It owed no other debts. Now surely a mortgage by way of preference upon property worth $3,000 to secure $335 cannot be regarded as fraudulent as against a solitary creditor holding a claim of $122.15. But plaintiff who stands in Litchfield's shoes, holding under him by a quit-claim deed, is clamorous in his charge of fraud, on the ground that there is an unlawful preference of creditors. The plaintiff while making these charges is endeavoring to hold the property worth $3,500, for a debt originally but $122.16, which cost him only $171.66, and thus defeat two other creditors holding just claims, one for $335, and the other for about $300. A court of equity will not aid him in his grasping enterprise; it will not be moved to come to his aid in order to enforce a title based on a sheriff's deed and sale for a consideration so inadequate. His hands are not clean enough to be held up in a court of equity. They smell of oppression and avarice. He is entitled to no relief.

IV. Plaintiff insists that Mrs. Lane's mortgage is not based upon a valid claim against the church, for the reason that the note of her husband to Teabout was a contribution to pay the debt of the church. This we think is true. But the claim of Litchfields is of the same character, and differed from Mrs. Lane's claim in no respect. If the church may be compelled to pay the Litchfield claim, we think plaintiff ought not to complain that it voluntarily secured Mrs. Lane's claim.

V.   We may remark appropriately that the case on the part of the defendants, as the trustees of the church, shows that they sacrificed the property of the church without any effort disclosed by the evidence to save it.   For trifling debts they permitted valuable property to be lost.   In this they were unfaithful to their trusts.

The plaintiff, as we have shown, has no standing in a court of chancery, nor can his actions be approved *in foro conscientæ*, and when tried by the principles of the gospel he preaches, are subject to severe condemnation.

Under the pleadings in the case, no relief can be granted to the church, even if it be entitled thereto, according to the rules of equity.   We make no inquiry as to its rights and equities.

The decree of the Circuit Court dismissing plaintiff's petition is

AFFIRMED.