SAIDE *v.* BRAZY.

1. FRAUDULENT CONVEYANCES—SOLVENCY OF GRANTOR.
    Debtor who retains a sufficient amount of property to protect and
    satisfy his creditors has a right to dispose of any other prop-
    erty which he might have as he sees fit.

2. SAME—BONA FIDE PURCHASER—JUDGMENT CREDITOR—EVIDENCE.
    In suit by one claiming to be a *bona fide* purchaser of real estate
    to quiet title to property he had allegedly purchased from his
    brother-in-law, as against judgment creditor of grantor who
    had been convicted of a criminal offense and which creditor
    had levied execution on property involved, evidence *held*, not
    sufficient to justify disturbing decree for creditor.

Appeal from Berrien; White (Charles E.), J. Submitted June 8, 1937. (Docket No. 27, Calendar No. 39,495.) Decided September 1, 1937.

Bill by Abraham Saide against Harry B. Brazy and wife, Harry Engel and wife and Floyd O. Jellison for an injunction and to quiet title to land. Cross-bill by defendant Jellison against plaintiff to set aside a deed to, and to allow sale of, property. From decree for defendant Jellison, plaintiff appeals. Affirmed.

*Charles W. Gore* and *Clarence E. Butler,* for plaintiff.

*Burns & Hadsell* and *Floyd O. Jellison,* for defendant Jellison.

POTTER, J. Plaintiff filed a bill to quiet title to real estate in Berrien county. From a decree for defendant Jellison, plaintiff appeals.

Prior to filing the bill herein, John Nahas and Bonnie Nahas owned the premises in question. Nahas and wife deeded them to Harry B. Brazy and Harry H. Engel to secure the grantees for signing a bail bond for the appearance for trial of Herman Chandjie and Edward Mannings in Porter county, Indiana. Chandjie and Mannings appeared for trial, but Brazy and Engel neglected to deed the property back to John Nahas and Bonnie Nahas.

Nahas was arrested in South Bend and retained defendant Jellison, an attorney, to defend him. He gave Jellison a note for $4,000. Small payments were made from time to time thereon. Subsequently defendant Jellison commenced suit by attachment in Berrien county. This attachment was levied upon the property in question. Jellison obtained a judgment for the balance due upon the note, and interest, of $3,397.77 and costs.

Plaintiff is a brother-in-law of John Nahas who had been convicted of a criminal offense and was about to be sentenced when the contract in controversy here was made. Plaintiff claims that February 18, 1929, he paid Nahas $8,000 on this contract and that this, together with other moneys which he had from time to time advanced to Nahas, made $13,000, the purchase price mentioned in the contract. The agreement of February 18, 1929, between John Nahas and Bonnie Nahas, husband and wife, of the first part, and Abraham Saide, of the second part, recited that parties of the first part had on that date received from the party of the second part the sum of $13,000, for which the party of the second part had on that date taken from the parties of the

first part their notes, to become due: $5,000 on or before April 18, 1929, $5,000 on or before June 18, 1929, and $3,000 on or before August 18, 1929, with interest at seven per cent. per annum from date until paid, and attorney's fee; that to secure the payment of the above notes when the same should become due, the parties of the first part agreed that if they should fail to make the payments of said notes when the same became due, then and in that event they agreed to deed over the property in question to plaintiff Saide; and in the event the property was deeded to plaintiff, the notes should become paid in full. Nahas and wife did not repay the sums of money represented by the notes in question to the plaintiff, and on January 9, 1930, Nahas and wife deeded the lands and premises in question to plaintiff by warranty deed upon a purported consideration of "two dollars and other valuable consideration," and plaintiff surrendered the notes.

Defendant Jellison, after the recovery of judgment against Nahas in Berrien county, caused an execution to be issued on such judgment against Nahas and caused the same to be levied upon the lands and premises in question in November, 1933. This was more than two years after the filing of the bill of complaint which, among other things, sought to restrain the defendant Jellison from proceeding with his attachment of the premises in Berrien county.

Defendants Harry B. Brazy and Helen Brazy, Harry Engel and Lillian E. Engel, having been saved harmless, did not contest plaintiff's suit and decree was entered against them by default. They have not appealed. The real contest is between plaintiff Saide who claims he is a *bona fide* purchaser for value of the premises in question and defendant

Jellison who claims the contract and resulting deed between Nahas and wife and Saide is fraudulent.

Plaintiff contends the deed above mentioned was executed in pursuance of the agreement above mentioned for which plaintiff paid $13,000 in good faith. Defendant Jellison contends plaintiff did not pay for the contract and the resulting deed. The testimony shows the contract in writing was executed in the office of Robert S. Baker, a reputable attorney, in Michigan City, Indiana. Nahas testified Saide there paid him $8,000 in $50, $100 and $500 bills and that he, Nahas, subsequently paid a $1,000 fine and gave his wife about $7,000 of the money. Robert S. Baker, in whose office the contract was executed, testified the $8,000 was paid in his presence by plaintiff to Nahas. Neffew Sam, one of the witnesses to the agreement, an Arabian in nationality, testified he was present in the office of Robert S. Baker when the money was paid and counted and at the time the contract made made. Elmer Waltz, the other witness to the contract, testified he was in Baker's office at the time the money was paid by plaintiff to Nahas, but did not know the amount paid.

Plaintiff was examined rather closely about where he procured the money. He testified he had a part of the money in the house, that he carried an account at Lamson Brothers & Company, brokers, in Chicago, and further testified upon cross-examination:

"*Q.* We will make it definite. On the 18th of February, 1929, or about that time, how much money did you have deposited with them? $10,000?

"*A.* More than that.

"*Q.* $15,000?

"*A.* No, not more than $15,000. About $11,000, something like that.

"*Q.* $11,000 in February of 1929 with this broker?

"*A.* Yes.

"*Q.* Did you take any of this money to loan to Mr. Nahas?

"*A.* Yes, I take $6,000.

"*Q.* Draw that money that day, or the day before?

"*A.* Not that day. A couple days before I give him that money.

"*Q.* Draw $6,000 from the Lamson Bros., about the 16th of February, 1929, did you? You understand that do you?

"*A.* Yes.

"*Q.* You understand the question, do you?

"*A.* Yes.

"*Q.* You know what I said?

"*A.* Yes.

"*Q.* And on or about February 16, 1929, you drew from the broker, Lamson Bros. & Company, $6,000 in cash. That is right?

"*A.* Yes."

The testimony of plaintiff satisfied the trial court at the time that plaintiff was entitled to a decree. But it did not satisfy defendant Jellison who asked leave to take additional testimony,—and subsequently testimony of Leo A. Long, head bookkeeper for Lamson Brothers & Company, brokers, in Chicago, and the testimony of Thomas L. Dowd, head of the margin department of Lamson Brothers & Company, brokers, in Chicago, was taken by deposition. The substance of the testimony of these parties was that they had charge of the records and accounts of Lamson Brothers & Company, brokers, and their testimony was corroborated by the records kept by the brokerage firm, and was to the effect that in February, 1929, plaintiff had no account with Lam-

son Brothers & Company, that he did not open an account with them until February, 1931; that he did not draw $6,000, or any other sum, from Lamson Brothers & Company in 1929, and that the largest amount he had ever withdrawn from his account with Lamson Brothers & Company was .on June 16, 1931, when he withdrew $116. After considering this testimony, the court entered the decree in question in favor of defendant Jellison.

Appellant contends, notwithstanding the conveyance of this property by the contract and deed, it did not render Nahas insolvent. If Nahas retained a sufficient amount of property to protect and satisfy his creditors, then, of course, he had a right to dispose of any other property which he might have as he saw fit. But the testimony bearing on this question is in dispute and we find no reason for disturbing the decree of the trial court, which is affirmed, with costs.

Fead, C. J., and North, Wiest, Butzel, Bushnell, Sharpe, and Chandler, JJ., concurred.