BOSWORTH, Appellant v. HAGERTY, Respondent

(99 N.W.2d 334)

(File No. 9759. Opinion filed November 18, 1959)

**Fred D. Shandorf,** Mitchell, **M. T. Woods,** Sioux Falls, for Plaintiff and Appellant.

**Donald Fellows,** Mitchell, for Defendant and Respondent.

RENTTO, J.   This action concerns the title to a tract of land in Aurora County containing about 536 acres. The record title thereto was in E. B. Bosworth at the time of

her death. The plaintiff, D. W. Bosworth, is her surviving husband and the defendant, John A. Hagerty, is her son by former marriage. These two are her sole heirs at law.

It is the claim of the plaintiff, predicated on SDC 59.0102(4), that his deceased wife held the title to this property as the trustee of a resulting trust for his benefit because he had paid the consideration therefor. He asks in the alternative that if this is not established that the property involved be made subject to a judgment in his favor for the reasonable value of the money spent by him in its purchase, improvement and maintenance. These claims were resisted by the defendant son who asked that the title to an undivided one-half interest therein be quieted in him. The trial court held against the plaintiff on both counts and entered a judgment declaring that the husband and son were each the owner of an undivided one-half interest in the property. This appeal is by the plaintiff husband.

■ Plaintiff and E. B. Bosworth, also known as Elizabeth B. Bosworth, were united in marriage in 1922 and lived together until her death on December 17, 1956. They had no children. This property had been owned by the Bosworth family for years, in fact, it had been their family home. It was acquired by plaintiff's father on foreclosure of a mortgage in 1925. When the father died it was subject to a mortgage. In 1932, after his death, all of the heirs conveyed their interest to the plaintiff. He redeemed the property from foreclosure of the mortgage thereon and on the same day mortgaged it to secure a loan of school and educational funds from the State of South Dakota. The school fund mortgage was foreclosed and a sheriff's deed to the premises issued to Aurora County on December 2, 1941.

In January 1942 the county offered the property for sale at public auction and sold it to the decedent, E. B. Bosworth, under a contract for deed. She was not present at the sale but her husband attended and bid in the property for her. She carried out the terms of the contract and on May 6, 1944, received a deed to the premises. It was executed on behalf of the county by her husband who was

then the chairman of the Board of County Commissioners. He took office as such commissioner in January 1941 and served until January 1949. Whether he was present at the meeting at which the sale was approved does not appear. Nor does he recall whether he was present at the meeting which authorized the sale. The trial court was of the view that because he was a county commissioner at the time of the sale and was prohibited by law from purchasing this property, he was precluded from enforcing the claimed trust. This is also our view.

At the time of this sale SDC 12.2202 regulating the sale by a county of property acquired on foreclosure of a school fund mortgage provided:

"Whenever the board of county commissioners deems it advisable or whenever a petition of ten legal voters of any county is presented to such board asking that certain real property therein described, belonging to the county and sale of which is authorized in the preceding section, be offered for sale, it shall be the duty of the commissioners to consider such petition, and if, in the opinion of a majority of the commissioners, it is to the best interests of the county to sell such real property, the board of county commissioners shall direct that such real property be offered for sale in accordance with the provisions of this chapter."

In SDC 13.1308 the legislature declared that:

"Every public officer, being authorized to sell or lease any property, or make any contract in his official capacity, who voluntarily becomes interested individually in such sale, lease, or contract, directly or indirectly, is guilty of a misdemeanor."

Concerning the purchase of this land plaintiff alleges "that the record title to said above described real estate was in the decedent's name for convenience only." and "That in truth and in fact the plaintiff, D. W. Bosworth, bought said land, paid for it and has had the use and possession thereof at all times since the acquisition,". The

162

stipulated facts support these claims. Manifestly the sale in question was contrary to the provisions of SDC 13.1308. Consequently it is an unlawful contract, SDC 10.0701, Norbeck & Nicholson Co. v. State, 32 S.D. 189, 142 N.W. 847; Brown v. Kossove, 8 Cir., 255 F. 806. To hold otherwise would tend to make impotent a clear legislative proscription.

Plaintiff urges that his conduct in this matter should be measured by the rule announced in Crocker v. Cumberland Mining & Milling Co., 31 S.D. 137, 139 N.W. 783, which under some circumstances permits a director of a private corporation to enter into a binding contract with the corporation. The answer to this is that "A stricter rule is laid down in regard to public corporations, and it is held that a member of an official board or legislative body is precluded from entering into a contract with that body,". Williston, Contracts, Rev.Ed., § 1735. The common law developed this rule to effectuate public policy.

It seems to us that for reasons that are persuasive and well known our legislature has decreed that no public official should be on both ends of a sale of public property, including those acting as members of a board. This enactment very obviously was for the protection of the public corporations and their taxpayers. It declares a public policy. A public official who enters into a contract in violation of such policy may not expect aid from the courts in enforcing rights thereunder. In such situations the law leaves the parties where it found them. Norbeck & Nicholson Co. v. State, supra. It will give them no aid in getting out of the situation into which they have placed themselves. Consequently plaintiff may not enforce a resulting trust in this land.

We realize that this result may seem harsh but it must be remembered that the rules of equity and natural justice are laid aside if their application would tend to modify policies adopted for the protection of public corporations or their taxpayers. Carlson v. City of Faith, 75 S.D. 432, 67 N.W.2d 149. Our concern must be the promotion of the public policy. See E. P. Wilbur Trust Co.

v. Fahrendorf, 64 S.D. 124, 265 N.W. 1. When a purchaser not entitled to acquire public property buys it in the name of another he commits a fraud on the government and may not enforce a resulting trust in it. Restatement, Trusts, 2d Ed., § 444d; Scott on Trusts, 2d Ed., § 444; Perry on Trusts, 7th Ed., § 165 and Bogert Trusts and Trustees, § 463. See also Englund v. Berg, 70 S.D. 334, 17 N.W.2d 638 where the transfer was in fraud of creditors. It would indeed be strange if one who acquires an interest in property in violation of a criminal statute or contrary to the public policy of the state, would be protected in that conduct by a court whose precepts are reflective of conscience.

Plaintiff argues that if his purchase was illegal it was validated by Ch. 33, Laws of 1953. Such section [§ 1] provides:

"That all instruments of conveyance of real property made by any county prior to the effective date of this act, * * * are, notwithstanding any omissions, irregularities or defects in the proceedings had and taken by said county to sell and convey the same, hereby validated, legalized and cured to the extent that such conveyences shall operate to convey to the person named as grantee in such instrument of conveyance all of the right, title and interest of said county in and to such real property."

As we see it this chapter is concerned only with the proceedings had and taken by the county in selling and conveying property. We are satisfied that it was intended to validate only procedural omissions, irregularities or defects. The defect in this purchase is outside of that category. The difficulty here is that plaintiff was not permitted to be individually interested in the sale—something that the county had nothing to do with. The cure provided by this section does not extend to illegal acts such as plaintiff committed.

He also urges that any taint of illegality concerning his acquisition of the property was removed by a judgment entered on February 16, 1949, in other litigation in

164

which he and the county were involved. Concerning this the record shows that on November 18, 1948, Aurora County instituted an action against him and one Gerhart to quiet title to a quarter section of land which the county had sold to Gerhart. It was the claim of the county that such sale was illegal because plaintiff, a county commissioner at the time of the sale, was individually interested in it. Apparently about this same time the county instituted another action against plaintiff and his wife. The second action sought to recover money paid by the county to plaintiff's wife for gravel purchased from her at a time when her husband was a county commissioner. These actions were disposed of by judgment entered on stipulation of the parties. The commissioners by resolution authorized the stipulation husband was a county commissioner. These actions were disposed of by a judgment entered on stipulation of the parties in the two actions goes on to state that:

> "Whereas, the plaintiff had made other claims against the defendant; and
> "Whereas, said county and all of the defendants above named in both of said actions, are desirous of having said actions dismissed and all claims, actions or causes of actions settled, compromised, satisfied and discharged."

Then it recites that the parties agree that Bosworth is to reconvey the quarter section in litigation to the county and that his check issued on its purchase is to be returned to him and both actions are to be dismissed with prejudice. There is also the further agreement that the deed is accepted in full settlement, satisfaction and discharge of all claims, actions or causes of action which the county has or might have against the other parties, and that the county releases and forever discharges them from any and all liability for and on account of any contracts, transfers, or other transactions which the county had or might have had with them; and that all of said claims, actions or causes of action are settled, satisfied and discharged. Clearly this further agreement is a general release.

In Mellette County v. Arnold, 76 S.D. 210, 75 N.W.2d 641, this court discussed the effect of judgments entered by stipulation in actions involving a county. As said in that case the controlling question is whether those acting for the county have authority to bind the county by their agreement. However, in this case we do not reach that question unless it is first determined that this release extends to the sale here involved. On this feature the evidence is undisputed. It consists of copies of the stipulation, resolution and judgment.

■ This determination involves the application of SDC 47.0241. That section provides:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

The release was executed February 15, 1949. Of course the the county knew when it executed the release that the property here involved had been sold to plaintiff's wife, but so far as appears from this record the fact that plaintiff was voluntarily interested individually in such sale, was not disclosed until the commencement of this present action in April 1957. County commissioners act in a fiduciary capacity. A general release executed by them on behalf of the county must be subjected to careful scrutiny, and any reasonable doubts as to its scope should be resolved in favor of the county. Otherwise public rights are in danger of being unintentionally bargained away. Accordingly, on this record, it is our view that the release does not extend to the sale here involved.

■ In this connection it is proper to observe that a resulting trust must come into an existence, if at all, at the instant the transfer is made and the legal title vests in the claimed trustee. Perry on Trusts, supra, § 133; Fox v. Fox, 56 N.D. 899, 219 N.W. 784. Since plaintiff was voluntarily individually interested in the sale no trust resulted when the property was conveyed to his wife. Con-

sequently the claimed subsequent settlement with the county would be of no aid in the creation of a resulting trust. Higginbotham v. Boggs, 4 Cir., 234 F. 253. Whether a trust results is detemined as of the time of the transfer.

■ Plaintiff's cause of action concerning the substantial permanent improvements made by him on the property is bottomed on SDC Supp. 37.1516-1. That section entitles him to recover the value of permanent improvements made by him on real estate that he is "holding under color of title adversely to the claim of a defendant or intervenor,". Defendant argues that plaintiff did not hold the premises under color of title at the time he made such improvements and is therefore not entitled to any recovery under this statute. This was also the conclusion of the trial court.

Our statute on recovery for improvements was amended by Ch. 140, Laws of 1949. This change extended its coverage to unsuccessful plaintiffs and intervenors but did not alter its purpose. In Seymour v. Cleveland, 9 S.D. 94, 68 N.W. 171, 173 this court said:

"The evident purpose and design of the provisions of the statute referred to are to protect one who has made improvements upon land which has been conveyed to him, and which he in good faith believes vests the title in him, but which, upon investigation, proves to be an invalid title."

In Parker v. Vinson, 11 S.D. 381, 77 N.W. 1023, 1024, the negative of this is stated thus:

"Of course, if such party has actual knowledge that his title is invalid, or of facts that would create in his mind a reasonable doubt as to his title, or **if he** makes improvements after actual notice that his title is invalid, he would not be entitled to recover for such improvements."

Under the circumstances of this case it seems to us that the plaintiff is not in the class of persons intended to be protected by this statute.

The term color of title as used in this statute is limited to a paper or written title. Deffeback v. Hawke, 115 U.S. 392, 6 S.Ct. 95, 29 L.Ed. 423; Wood v. Conrad, 2 S.D. 334, 50 N.W. 95; Seymour v. Cleveland, supra; and Parker v. Vinson, supra. See also Murphy v. Nelson, 19 S.D. 197, 102 N.W. 691; Coulter v. Gudehus, 30 S.D. 616, 139 N.W. 330 and Theisen v. Qualley, 42 S.D. 367, 175 N.W. 556. In this case plaintiff had no paper title so he is not within the protection of the statute on which he relies.

In his behalf it is urged that under the rule in Pendo v. Beakey, 15 S.D. 344, 89 N.W. 655, 659, actual possession alone is color of title. Such is the holding of that case but it does not purport to overrule our earlier decisions and is limited to situations "where neither party claims any higher or better title than actual possession." That is not the situation here. The only case we have found where this court has cited the Pendo case is Pendo v. Blythe, 15 S.D. 358, 89 N.W. 1135, a companion case. Subsequent to the decision in the Pendo case this court in writing about color of title, in Skelly v. Warren, 17 S.D. 25, 94 N.W. 408, specifically approved the meaning given that term in Seymour v. Cleveland, supra [9 S.D. 94, 68 N.W. 173], which was that, "To constitute one holding under color of title, he must show a conveyance apparently valid upon its face,". Plaintiff does not even claim that he can do that. Consequently the trial court did not err in concluding that he was not holding under color of title.

■ As to the improvements there is a further reason why plaintiff cannot recover. The policy of the law which denies plaintiff any relief in enforcing a resulting trust in this land because of his illegal conduct logically extends to deny him relief by reason of improvements placed thereon. In such circumstances his plea for affirmative relief falls on the court's deaf ear. Beverage Co. v. Villa Marie Co., 69 S.D. 627, 13 N.W.2d 670. To allow him recovery for these improvements would confer upon him benefits arising out of a transaction prohibited by statute and the result of his own unlawful act. The illegality of the transaction justified the trial court in denying both requests of the plaintiff for affirmative relief.

Affirmed.

All the Judges concur.