**UNITED STATES of America,
Plaintiff,**

v.

**Harry SCHROEDER, Amanda Schroeder, Schroeder Packing Company, Metropolitan Life Insurance Company, et al., Defendants.**

**Civ. No. 2–422.**

United States District Court
S. D. Iowa, W. D.
April 8, 1964.

Donald A. Wine, U. S. Atty., Des Moines, Iowa, for plaintiff.

Leland White, Harlan, Iowa, for defendants.

HANSON, District Judge.

This is an action by the United States as a creditor of Harry Schroeder to set aside legal title to certain tracts of land held by Richard Schroeder and Bert Colwell.

The court will first deal with the three tracts of land in which Richard Schroeder ho'ds legal title and which the United States is seeking to have set aside. These three tracts are known as the Adams County Farm, the Treynor Farm, and the Allen-Otis Farm. Richard Schroeder obtained legal title to the Adams County farm in 1951. There is evidence that the total purchase price of this farm was $57,500.00, that a mortgage of $35,200.00 was assumed, and that Richard Schroeder paid $10,000.00 of the remaining $22,300.00. The evidence on this point while not very contradictory was somewhat unclear because the lapse of time between

trial and the transaction was about twelve years. Part of Richard Schroeder's $10,000.00 came from bonds he held.

Richard Schroeder also obtained legal title to the Treynor farm in 1951. When this farm was purchased a mortgage of $19,000.00 to Metropolitan Life Insurance Company was assumed. Also a large number of debts of the grantor were assumed. At the time Richard Schroeder took these two farms, he was 21 years old.

The third tract of land was called the Allen-Otis farm. It was an unimproved 40 acres which Richard Schroeder obtained from Ed Allen in 1947. In 1948 an additional 1½ acres was obtained from Alice Otis. Richard Schroeder was then 17 years old. The money to buy the farm was a gift obtained from his father. The amount paid out for this tract of land was about $2,500.00.

The testimony was that Richard Schroeder had always worked for his father, Harry Schroeder, and when he became 21 years old, his father, wanting to do something for him, helped him obtain the Adams County farm and the Treynor farm. It appears that Harry Schroeder may have invested between $15,000.00 and $25,000.00 for the two farms exclusive of mortgages and debts assumed. Harry Schroeder testified it was $15,000.00 and that at that time he was worth over $1,000,000.00.

Shortly after Richard Schroeder obtained the Treynor and the Adams County farms, he went into the Armed Services. His father, Harry Schroeder, managed the farms. The idea was that the farms would pay for themselves. The profits from the farms were used for that purpose. The years 1952 and 1953 were not very profitable years. The tenants and farm workers testified that most of their dealings were with Harry Schroeder, but that they were also in part with Richard Schroeder. Richard Schroeder was not financially capable of the management.

In general, the United States is attempting to use two theories to set aside the legal title in Richard Schroeder as

to these three tracts of land. The first is resulting trust theory and the second is fraud theory based at least in part upon insolvency, lack of consideration, and other badges of fraud.

At the pretrial conference, when the United States was asked to elect between whether they were going to try to prove insolvency or actual fraud or actual trust, counsel for the United States stated that they believed that they could show that Harry Schroeder was close to insolvency, but they indicated that because of this, that it was not the theory they were primarily relying on. The basis for any attempt to show insolvency is to show the large unassessed income tax liability. Evidence was offered which would show Harry Schroeder at least as of December 31, 1958, had realty and personalty worth $1,458,000.00 and debts of $237,977.00. This left an amount in excess of the tax liability.

The resulting trust theory is based upon the presumed intent that the payor of the purchase price and not the person receiving legal title is to be the actual owner thereof. It is an intent enforcing trust. Bogert on Trusts, Sec. 463; 89 C.J.S. Trust § 102(b), p. 947. A resulting trust must be established by clear and convincing evidence. Hopp v. Rain, 249 Iowa 891, 88 N.W.2d 39. The proof must be clear and unequivocal. It is not to leave the existence of any element to conjecture or to uncertain inference. Cunningham v. Cunningham, 125 Iowa 681, 101 N.W. 470; Ross v. Ross, Iowa, 126 N.W.2d 369.

Under some situations where one person pays the purchase price for a property and another takes title, a resulting trust is said to have presumptively arisen. This is not the rule where the father pays the consideration and his child takes title. In that instance, a gift is presumed instead of a resulting trust. Ross v. Ross, supra; Barth v. Severson, 191 Iowa 770, 183 N.W. 617; Olsen v. Best, 167 Neb. 198, 92 N.W.2d 531 (Neb.); Luckhart v. Luckhart, 120 Iowa 248, 94 N.W. 461; Bird v. Stein, 258 F.2d 168 (5th Cir.); Restatement of Trust 2d, Sec. 442.

Viewing this case in the light of events at the time of vesting title, that is to say from 1947 to 1951, and taking into consideration the evidence offered, the government falls far short of the clear and convincing evidence commensurate with the establishment of a resulting trust. True it is that subsequent events are permitted to cast a light in hindsight, but even here there is only doubtful inference and it is far from illuminating. Even the tax situation of the father, Harry Schroeder, was not the huge and staggering obstacle that was so apparent in subsequent years. The government's attack upon these titles did not take place until 1961. The government has pressed its claim that the deeds were in substance a part of a fraudulent scheme. Subsequent adjudications by the Tax Court and other courts and the course of conduct and activity of Harry Schroeder subsequent to 1951 were far from exemplary but it is difficult to relate them back to the events of 1947. It is especially difficult to relate them with the degree of certainty necessary to disrupt titles created in 1947 and 1951.

A resulting trust must come into existence, if at all, at the instant the transfer is made and legal title vested. Bosworth v. Hagerty, 78 S.D. 157, 99 N.W.2d 334; 89 C.J.S. Trusts § 102(e) pgs. 950–951; Sec. 102(b) p. 948; Shaw v. Addison, 239 Iowa 377, 28 N.W.2d 816. The subsequent developments are relevant only to the extent that they throw light upon the parties at the time title was transferred.

Harry Schroeder and Richard Schroeder both testified that Richard Schroeder was to be the absolute owner of the land and that Harry Schroeder retained no interest. There was nothing to attack their credibility. No evidence introduced made their testimony unreliable.

The alternative theory of the United States is that if gifts were made, they

were purely voluntary and part of a program to hinder and defraud creditors. A sum of money was transferred by Harry Schroeder to Richard Schroeder which was used as part of the downpayment in purchasing the Adams County land and as the downpayment for the Allen-Otis and Treynor land.

Either actual fraud or constructive fraud could possibly be proven by showing badges of fraud, the badges being circumstantial evidence of intent. It is claimed that the transfers were voluntary. While there was no legal consideration for the money given by Harry Schroeder to Richard Schroeder, they did have an air of being bona fide in that it was in return for services of his son and an attempt to do something for him on his 21st birthday. The minor son's services are not legal considerations, but they are evidence here tending to show a bona fide transaction.

The United States has not really claimed that they showed that Harry Schroeder was insolvent at the time of the transfers in question. The United States does claim that the defendants have not shown Harry Schroeder to be solvent at the time of the transfers. Their strongest contention centers around the valuation of certain stock owned by Harry Schroeder. The evidence shows that as of December 31, 1958, Harry Schroeder had real property in the amount of approximately $882,000.00. This amount did not include the value of the land in question. He had personalty worth $572,000.00. This included the Schroeder Packing Company stock worth approximately $500,000.00. He had debts of approximately $238,000.00. This left his net worth at about $1,216,000.00. This was a net worth in excess of his tax liability later to be assessed. The United States argues that the $500,000.00 of stock was apparently not at market value. The United States did not offer any evidence or call the court's attention to any evidence tending to show that this valuation was not substantially correct. It was corroborated by Harry Schroeder himself who testified that he was worth

in excess of $1,000,000.00 in 1951. The balance sheet which shows the above figures was made as of December 31, 1958.

In 1961, a tax liability of $1,133,949.39 was assessed. This included $329,062.96 for interest and $362,186.35 for fraud and delinquency penalties. What part of this had matured by 1951 is not too clear.

The burden of proving insolvency may be different under the Iowa law than under the Uniform Fraudulent Conveyance Act. The court in In Re Liquimatic Systems, Inc., D.C., 194 F.Supp. 625, using the Uniform Act, stated that as a general rule, it is solvency and not insolvency which is to be presumed. See also Miller v. Lange, 234 Wis. 460, 290 N.W. 618; Dean v. Torrence, 299 Mich. 24, 299 N.W. 793. In Iowa, there is authority indicating that where there is a family relation and grossly inadequate or lack of reasonable consideration, the burden is upon the person claiming under the transfer to prove solvency. Hansen v. First National Bank, 197 Iowa 1101, 198 N.W. 505; Campbell v. Campbell, 129 Iowa 317, 105 N.W. 583. If the burden was on the defendant to prove solvency the burden was carried. It was shown by substantial evidence that Harry Schroeder was solvent. Whether or not the plaintiff could have rebutted this evidence to the point where the defendant's evidence would not have been sufficient is not a question here because the plaintiff did not do that. Clearly Harry Schroeder's assets were more than his liabilities if the valuation placed upon his securities was proper. This problem of valuation of securities is annotated at 133 A.L.R. 1068 but there is not a wealth of authority. It seems clear from these cases that securities may be valued at par if they are not in default at that time. In Hutchinson v. Fidelity Investment Ass'n., 106 F.2d 431, 133 A.L.R. 1061, the court said par value was proper in absence of something to indicate they could not be collected at par if the securities were held for investment, not sale. That is the situation in this case. Book value is not always par value but

ordinarily it is. In Re Fisher's Estate, 344 Pa. 607, 26 A.2d 192. The possibility of any surplus in the Schroeder Packing Company was not shown in this case and would not seem important. Book value also is not necessarily market value but has been said to be prima facie the intact value. In Re Waterhouse Estate, 308 Pa. 422, 162 A. 295; In Re Fisher's Estate, supra; see also Fleming v. Fleming, 211 Iowa 1251, 230 N.W. 359.

In general the rule is that in determining solvency, assets should be given a fair valuation and the test is what the property is worth as a marketable commodity, at a given time, with no special conditions prevailing other than those which affect the market generally. It has been said it contemplates a reasonable time for the owner to sell his property. See generally 9 Am.Jur.2d, p. 174. The Iowa court accepts the rule in Crenshaw v. Halvorsen, 183 Iowa 148, 165 N.W. 360. There the court said:

> " 'Insolvency' is a word of somewhat variable meaning. When applied to a person engaged in business as a merchant or trader, it is ordinarily defined as inability to meet one's obligations as they mature in the ordinary course of business, but, as used generally and as accepted generally in common speech, it means rather such a condition of a person's affairs that the aggregate of his property is not, at a fair valuation, sufficient in amount to pay his debts. Indeed, such is the statutory definition in the Bankruptcy Act itself."

See also Knowles v. Crow, 289 Ill.App. 108, 6 N.E.2d 892; State ex rel. v. Caldwell, 21 Tenn.App. 396, 111 S.W.2d 377. Even if the property is sold by legal process, this does not mean that a reasonable time to liquidate is not to be contemplated.

The solvency or insolvency which is material is that which existed at the time of the transfer and not that which existed at the time of the execution. Connolly v. Dillrance, 50 Iowa 92; Richman v. Ady, 211 Iowa 101, 232 N.W.

813; Pearson v. Maxfield, 51 Iowa 76, 50 N.W. 77. There is proof that in 1947 and 1951, Harry Schroeder could have paid his debts and there is no evidence to the contrary. The fact that he is now insolvent is not sufficient to hold otherwise. Neither was it shown that Harry Schroeder was contemplating insolvency. The evidence adduced by the defendants inferred that he was not contemplating insolvency. Therefore, even if the gifts were voluntary, there is no constructive fraud based upon voluntary gifts made during insolvency because at the time of the transfers Harry Schroeder was shown to be solvent. The attempt on the part of the plaintiff to show that there was a voluntary gift made to Richard Schroeder and the attempt to show that there was no gift made at all but that Harry Schroeder always intended to remain sole owner of the property are inconsistent remedies and under the Iowa law the plaintiff would be required to elect as to which remedy it sought to pursue. Mobley v. Boyt Farms Co., Iowa, 126 N.W.2d 280. When asked to elect at the pretrial conference, the plaintiff, feeling that it could not prove insolvency or that the defendants could prove solvency, elected to attempt to prove that Harry Schroeder intended and did remain the sole and only owner of the property in question. This is an alternative reason for holding that the deeds to Richard Schroeder cannot be set aside by reason of a voluntary gift having been made as the court has considered the matter on the merits and found Harry Schroeder to have been solvent at the time of the transfers.

Insolvency is not necessary if an actual intent to defraud or to hinder and delay creditors can be proven. However, such proof must be by clear and convincing evidence. It is unnecessary to restate the evidence which would bear on that type of theory. No such actual intent was shown by clear and convincing evidence. Indeed, the strongest evidence is to the effect that the transfers were in good faith and that the creditor situation had nothing to do with them.

There are no cases which have been presented to this court where a transfer by a solvent grantor has been set aside in the absence of actual intent to hinder, delay, or defraud creditors or in absence of facts upon which a trust could be declared. The general rule is discussed in 117 A.L.R. 1263. Generally a solvent person can give away money as long as the gift does not render him insolvent. The law is perhaps more clear in States where the Uniform Fraudulent Conveyance Act has been adopted. That Act reads:

> "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation incurred without a fair consideration * * *. Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

In Re Liquimatic Systems, Inc., supra; Field v. Lew, D.C., 184 F.Supp. 23; Saide v. Brazy, 281 Mich. 131, 274 N.W. 736; Crowley v. Crowley, 219 Minn. 341, 18 N.W.2d 40; McGuigan v. Heuer, 66 N.D. 710, 268 N.W. 679. The Iowa law is the same. If the transaction is to be found fraudulent on the basis of facts which will not support a finding of actual intent to hinder, delay, or defraud creditors, insolvency is a necessity. Price v. Scharpff, 220 Iowa 125, 261 N.W. 511; Robinson v. First M. E. Church, 59 Iowa 717, 12 N.W. 772; Ruthven v. Clarke, 109 Iowa 25, 79 N.W. 454; Chamberlain v. Fay, 205 Iowa 662, 216 N.W. 700.

The plaintiff also claims the transfer was fraudulent because Harry Schroeder retained the use, possession, and benefit of the property. 24 Am.Jur., Section 37, p. 196 states:

> "An agreement which, being annexed to a conveyance of property, contemplates the employment of the transferrer by the transferee has been held by some of the authorities not to invalidate the transaction and by others to render it illegal as to creditors of the transferrer. This fact, no doubt, is to be considered by the trier of facts in conjunction with other circumstances in determining the issue as to fraudulent intention, intention being, according to many decisions, the factor which is determinative of the dispute. The question is not as to what the grantor may actually have intended, but as to the result of his act. If the agreement has resulted in hindering and delaying his creditors, the presumption conclusively arises that such illegal object furnished one of the motives for his making the contract; and the transaction will be held to have been fraudulent. If the purpose or intention of the agreement was to create a benefit or trust for the debtor, the conclusion is that the transfer was fraudulent. On the other hand, if the contract was simply an incident of the transfer and made, not in order to establish a trust or reservation in behalf of the transferrer, but for the purpose of realizing value because of special knowledge or ability on the part of the transferrer, the transaction is not subject to attack."

In this case, the evidence shows the arrangement between Harry and Richard Schroeder was not to establish a trust or reservation of an interest in Harry Schroeder. The burden was upon the plaintiff to show the contrary by clear and convincing evidence and this was not done. The record shows that Richard Schroeder went into the Armed Services later in the same year that he acquired the Treynor and the Adams County farms and that during this time, Harry Schroeder managed them, paid the mortgages, taxes, etc. out of the proceeds, and in general managed them as if he were a tenant. If there was a profit over the mortgage payments and taxes,

he took this as his share. When Richard Schroeder got out of the Armed Services, they agreed to continue this management until Richard could take over and manage the farms himself. It was an agreement to obtain the knowledge and ability of Harry Schroeder for a period of time.

The Government did show that Harry Schroeder did more of the management of these tracts of land than Richard Schroeder did and may have taken some profit for this. Where Harry Schroeder was solvent at the time the transfers were made, and where the evidence shows that while they were not completely for legal consideration, but were bona fide transfers or gifts, the fact of continuing management means little, especially where during the time the farms were being managed, Richard Schroder was in the Service or he was not financially able to run the farm himself.

On the side of the defendant, there is strong evidence. Transfer of a large amount of the assets is some evidence of fraud. But Harry Schroeder spent only $15,000.00 to $25,000.00, and he was worth probably $1,200,000.00. Percentagewise, it was small. There was evidence of other motives for the transfer. There was evidence of good reason for his continued management.

Whether the choice of law to be used in this case is that of Iowa or whether it should be general Federal law is not entirely clear. Commissioner of Internal Revenue v. Stern, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126, strongly indicates that Iowa law should apply. Although that case is not factually exactly the same as the present case, it is similar. The court there applied state law. The holding of that case apparently is that where the United States is asserting a right as a creditor of the taxpayer against the defendant and is not asserting a right of the taxpayer against the defendant, then state law controls the rights of the United States against the defendant. In United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135, the court held that the taxpayer's interest in property is controlled by state law, but if under state law the taxpayer has an interest, then the rights of the United States against that interest are controlled by Federal law. This is a case where the United States is asserting a creditor's right against property of Richard Schroeder and Bert Colwell, and asserting the right which Harry Schroeder is alleged to have as mortgagor or trust beneficiary. However, the decision in Petty v. Tennessee-Missouri Bridge Commission, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804, reversing 254 F.2d 857 (8th Cir.) somewhat confuses the situation, but probably does not alter the Stern or Bess cases. In any event, the court has considered the Iowa law and also the general trust and fraudulent conveyance law. The court has primarily discussed Iowa law and the parties here in their briefs primarily discussed the Iowa law.

As to the land in question to which Bert Colwell holds legal title, the United States is asking that the deed be treated as a mortgage and that Harry Schroeder be held legal owner subject to the claims for security.

The plaintiff alleges that on or about December 19, 1951, the defendant Harry Schroeder purchased real estate described as

The West Half (W½) of the Northeast Quarter (NE¼) of Section 20, Township 71 North, Range 43 West of the Fifth P.M., Mills County, Iowa,

and placed the legal title thereof in the name of Bert Colwell, Glenwood, Iowa, the defendant Harry Schroeder having furnished all the consideration for said purchase. Plaintiff further alleges that the farm is, in truth and in fact, and has at all times been owned by the defendant Harry Schroeder and subject to the Plaintiff's liens. Further, that at the time of said purchase and transfer to Bert Colwell the defendant Harry Schroeder was insolvent.

Plaintiff alleges that on or about October 29, 1952, the defendant Harry Schroeder purchased from Mariam R. Genung real estate described as

The East Half (E½) of the East Half (E½) of the Northwest Quarter (NW¼) and the Northeast Quarter (NE¼) of the Southwest Quarter (SW¼) of Section 20, Township 71 North, Range 43 West of the Fifth P.M., Mills County, Iowa,

and caused the legal title to said property to be placed in the name of Bert Colwell when, in fact, the consideration for the purchase was furnished wholly by the defendant Harry Schroeder at a time when he was insolvent and in truth and in fact the defendant Harry Schroeder has been at all times owner of said real estate and same is subject to the liens of the plaintiff.

The answer of Bert Colwell and interrogatories expounded and the answers thereto show that there is no question but that these are the correct legal descriptions of the property involved.

In Reusch v. Shafer, 241 Iowa 536, 41 N.W.2d 651, the court made clear the law which must be applied in this type of case. A warranty deed can by parol evidence be shown to have been intended to be a mortgage but the evidence must be clear and convincing. It must be also shown that the consideration for the warranty deed was an existing indebtedness together with the amount of such indebtedness, and that such indebtedness was not extinguished by the conveyance, but was kept alive. This must also be shown by clear and convincing evidence.

Any claim of fraud or trust theory made against Bert Colwell was apparently abandoned. The plaintiff's brief does not touch on these questions, but only asks that the deed be held to be an instrument of security.

There was an indebtedness of $4,000.00 existing at the time the deed was given and the evidence was that the debt was not extinguished. Harry Schroeder himself testified that Colwell was not intended to continue to be the owner of these two tracts of land in question.

Laches is not ordinarily a defense against a claim by the United States. Woods v. Wayne, 4 Cir., 177 F.2d 559; United States v. Sandlass, D.C., 34 F.Supp. 81; United States v. Carroll, 203 F.Supp. 423 (D.C.Ark.); Person v. United States, 112 F.2d 1 (8th Cir.). The doctrine of laches could possibly apply in a case where the claim of the United States is based on State law, but it is not necessary to decide this because the defendant has shown nothing but mere lapse of time upon which to base a finding of laches. The court feels that this is not the type of case wherein the Iowa court or any court would apply laches. The tax court entered its decision on August 27, 1957. It was not until June 23, 1961, that the decision was affirmed by the Circuit Court. Up to that time the United States was not in a position to know the extent of the liability of Harry and Amanda Schroeder and, therefore, would not know whether the Colwell land could be reached. The procedure of the United States avoided what could have been unnecessary litigation. This is not a basis for laches. Rule 8(c) of the Federal Rules of Civil Procedure makes both laches and statutes of limitations affirmative defenses. Neither were pleaded by the defendants. Of course, the plaintiff also did not plead specifically that the deed be declared a mortgage but the case was tried on this theory. See Sec. 1624, Volume 5, of the Iowa Forms of Civil Procedure and Practice.

Accordingly, the court concludes that the deed to Bert Colwell of two tracts of land described as follows:

The West Half (W½) of the Northeast Quarter (NE¼) of Section 20, Township 71 North, Range 43 West of the Fifth P.M., Mills County, Iowa; and

The East Half (E½) of the East Half (E½) of the Northwest Quarter (NW¼) and the Northeast Quarter (NE¼) of the Southwest Quarter (SW¼) of Section 20, Township 71 North, Range 43 West

of the Fifth P.M., Mills County, Iowa,

should be declared to be an instrument of security and judgment will be entered accordingly. The court further concludes that the above two tracts of land should be sold by the Receiver free and clear of all liens with reservations and judgment will be entered accordingly.

The court further concludes that plaintiff's cause of action against Richard Schroeder and his wife, Barbara Schroeder, to have the three tracts of land known as the Adams County farm, the Treynor farm, and the Otis-Allen farm declared to be the property of Harry Schroeder or to have said deeds to this property in the name of Richard Schroeder set aside should be denied and that cause of action should be dismissed and, accordingly, judgment will be entered.

It is ordered that the foregoing shall constitute the findings of fact, conclusions of law, and Order for judgment in this case. Rule 52(a) of the Federal Rules of Civil Procedure.